OPINION
{¶ 1} This is an appeal of the judgment of the Willoughby Municipal Court denying a motion to suppress filed by appellant, William E. Hall.
 {¶ 2} Hall was charged in the Willoughby Municipal Court on two counts: count one, operating a motor vehicle while under the influence of alcohol, in violation of Kirtland Hills Ordinance 333.01(a)(1), and count two, operating a motor vehicle with a prohibited breath-alcohol content, in violation of Kirtland Hills Ordinance 333.01(a)(4). *Page 2 
 {¶ 3} Hall filed a motion to suppress, and the following evidence was presented at the evidentiary hearing:
 {¶ 4} On June 20, 2007, at approximately 1:27 a.m., Mr. Chuck Throw, an individual travelling eastbound on Interstate 90, placed a 9-1-1 call to report his concern of an intoxicated driver. Mr. Throw reported to dispatch that at mile-marker 196 a vehicle came off the ramp and was swerving all over the road. Mr. Throw identified this vehicle as a black Grand Prix.
 {¶ 5} Dispatch responded that a deputy was on the way but told Mr. Throw to stay on the line. Upon the request of dispatch, Mr. Throw also provided a description of his vehicle, a yellow Kenilworth semi-truck with a white trailer. Mr. Throw followed the vehicle on Interstate 90, and he continued to provide dispatch with a firsthand account of the vehicle's location and his observations. At mile-marker 199, Mr. Throw again indicated that the black vehicle was "swerving back and forth." Mr. Throw relayed to dispatch that the black vehicle exited Interstate 90 at mile-marker 200 at State Route 44; however, he was going to continue his travel on Interstate 90.
 {¶ 6} Officer Ken Mescall of the Village of Kirtland Hills Police Department testified for appellee, state of Ohio. He stated that on June 20, 2007, he was on routine patrol on Interstate 90. At approximately 1:20 a.m., he received a dispatch regarding a vehicle that "was all over the roadway." The dispatch provided Officer Mescall with a description and location of the vehicle. Officer Mescall observed the vehicle exiting Interstate 90, and he began to follow the vehicle. Officer Mescall notified dispatch of the vehicle's license plate number, and dispatch identified the owner of the vehicle as Hall. *Page 3 
 {¶ 7} Officer Mescall followed the vehicle but did not observe any traffic violations. However, based upon the information he received from dispatch, Officer Mescall effectuated a traffic stop. Upon asking the driver of the vehicle for his license and registration, Officer Mescall noticed a strong odor of alcohol on his breath. Hall also told Officer Mescall that he had consumed three beers that evening. Officer Mescall administered the walk-and-turn test; however, Hall was unable to perform the test. Hall was given another opportunity to perform the test, but he refused. Thereafter, Hall also refused to perform the one-leg stand test. Hall was placed under arrest.
 {¶ 8} On August 2, 2007, Hall filed a motion to suppress claiming that Officer Mescall did not have a lawful cause or reasonable suspicion to perform an investigatory stop; that he did not have a reasonable suspicion to continue to detain Hall; and that he did not have probable cause to arrest Hall without a warrant. Further, Hall argued that Officer Mescall was outside his territorial jurisdiction in violation of R.C. 2935.03(D). A hearing was held on Hall's motion to suppress and, subsequently, it was denied by the trial court.
 {¶ 9} Hall pled no contest to count two, operating a motor vehicle with a prohibited breath-alcohol content, in violation of Kirtland Hills Ordinance 333.01(a)(4). Count one, operating a motor vehicle while under the influence of alcohol, in violation of Kirtland Hills Ordinance 333.01(a)(1), was dismissed. Hall was sentenced to 90 days in jail, with 85 days suspended, and ordered to pay a fine in the amount of $350. He was also ordered to serve five days in jail, or attend DIP and perform two days of community service. Hall's driver's license was suspended for 180 days with limited driving *Page 4 
privileges, and he was placed on probation for one year. The trial court stayed Hall's sentence pending the outcome of the instant appeal.
 {¶ 10} On appeal, Hall asserts the following assignments of error:
 {¶ 11} "[1.] The trial court committed a structural error in accepting defendant-appellant's plea in violation of his state and federal constitutional rights.
 {¶ 12} "[2.] The trial court committed plain error in considering hearsay evidence at appellant's suppression hearing.
 {¶ 13} "[3.] The trial court ruled against the manifest weight of evidence when it denied the appellant's suppression motion."
 {¶ 14} Since Hall's first and second assignments of error are interrelated, we will consider them together on appeal. Hall asserts that his "constitutional rights [were] violated when the state [failed] to produce [Mr. Throw] whose tape-recorded hearsay statements [were] published at trial and represent the sole basis for [his] investigatory stop." Hall argues that his right to confront witnesses against him, guaranteed by the Confrontation Clause of the Sixth Amendment to the United States Constitution, was violated. The Sixth Amendment's Confrontation Clause, applicable to the states by theFourteenth Amendment to the United States Constitution, provides that `in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."
 {¶ 15} In the instant case, the information provided by Mr. Throw to dispatch, and relied upon by Officer Mescall, was the sole basis for the investigatory stop of Hall. Hall maintains that Mr. Throw was not produced at the suppression hearing to be cross-examined; however, the 9-1-1 call placed by Mr. Throw was admitted into evidence. *Page 5 
 {¶ 16} As the state notes in its brief, Hall did not raise the Confrontation Clause issue at the trial court hearing. In fact, the recordings of the 9-1-1 tape were played at the suppression hearing and Hall failed to object. As a result, he has waived all but plain error.State v. Williams (1997), 79 Ohio St.3d 1, 4. Plain error exists only where the results of the trial would have been different without the error. State v. Issa (2001), 93 Ohio St.3d 49, 56. (Citation omitted.)
 {¶ 17} To support his argument, Hall cites to the United States Supreme Court case of Crawford v. Washington (2004), 541 U.S. 36. InCrawford, the United States Supreme Court held that testimonial statements of non-testifying witnesses may not be admitted or used against a criminal defendant, unless the declarant is unavailable to testify, and the defendant has had a prior opportunity for cross-examination. Id. at 53-54.
 {¶ 18} However, in State v. Massie, 6th Dist. No. OT-04-007,2005-Ohio-1678, the Sixth Appellate District declined to uphold the appellant's argument that the Confrontation Clause bars an officer from offering hearsay testimony as to the information provided by the informant to the dispatcher. Id. at ¶ 13-16. In Massie, the court stated:
 {¶ 19} "As a general principle, a court may consider hearsay testimony at a suppression hearing. * * * Under Ohio law, hearsay evidence in the form of a report of suspected criminal activity from a dispatcher to a law enforcement officer may act as an officer's sole support for an investigatory stop. * * * Despite appellant's arguments to the contrary, we conclude that the United States Supreme Court's decision inCrawford does not affect the foregoing established rule." Id. at ¶ 14. (Internal citations omitted.) *Page 6 
 {¶ 20} The Massie court further stated:
 {¶ 21} "In reaching its decision, the [Crawford Court] abrogated the rule set forth in Ohio v. Roberts (1980), 448 U.S. 56, that allowed,at trial, the admission of an unavailable witness's statement against a criminal defendant so long as it contained adequate indicia of reliability. * * * Pursuant to Roberts, the statement was required to be a `firmly rooted hearsay exception' or bear `particularized guarantees of trustworthiness.['] * * * According to Justice Anthony Scalia, permitting the law of evidence to regulate `out-of-court statements introducedat trial depends upon "the law of Evidence for the time being"' thereby rendering the `Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices.' * * * Because Crawford clearly applies to situations occurring at trial and does not overrule [United States v.Raddatz (1980), 447 U.S. 667] on the question of the admissibility of hearsay during a suppression hearing, we find that the rule of law set forth in Crawford is inapplicable to the case under consideration." Id. at ¶ 18. (Internal citations omitted and emphasis in original.)
 {¶ 22} We further recognize that the decision in Massie was adopted by the Fifth Appellate District in State v. Miller, 5th Dist. No. 07 CA 11,2008-Ohio-100, whereby the Miller court declined to extendCrawford to pretrial suppression hearings. Id. at ¶ 17.
 {¶ 23} In addition, the United States Supreme Court, in Davis v.Washington (2006), 547 U.S. 813, 821, emphasized that the admission of a hearsay statement is a violation of the Confrontation Clause only if the statement is "testimonial." The Court determined that the Confrontation Clause is not applicable to statements made "to *Page 7 
enable police assistance to meet an ongoing emergency." Id. at 828. The Supreme Court, in affirming the trial court's decision to admit 9-1-1 statements, stated:
 {¶ 24} "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id. at 822.
 {¶ 25} Hall attempts to distinguish Davis from the present case by stating that Mr. Throw was reporting past, non-emergency criminal activity of a swerving driver and, therefore, his statements should be considered testimonial in nature. We disagree.
 {¶ 26} Mr. Throw was not acting as a testifying witness; he was attempting to seek assistance against an impaired driver with whom he was sharing the road. His purpose in relaying this information to dispatch was not for the purpose of a later prosecution, but to enable the police to respond to an ongoing emergency. Therefore, based on the facts of the case before us, we conclude that the statements made by Mr. Throw were nontestimonial in nature and, thus, are not barred by the Confrontation Clause. Further, the important issue related to Mr. Throw's call is what he communicated to dispatch. The assessment made by Officer Mescall to pursue Mr. Hall was based on this communication. Any cross-examination of Mr. Throw could not add or detract from what the officer actually understood from the communication to dispatch. The recording of Mr. Throw's call is the critical aspect of his testimony. *Page 8 
 {¶ 27} Based on the foregoing, we conclude that plain error did not exist in the instant case; it is not clear that but for the alleged error the result would have been different. As such, Hall's first and second assignments of error are without merit.
 {¶ 28} Under his third assignment of error, Hall is challenging the trial court's ruling on his motion to suppress, arguing that it was against the manifest weight of the evidence.
 {¶ 29} According to Hall, Mr. Throw should not have been considered a reliable "citizen informant" since there is no evidence that Hall was traveling on Interstate 90 on the night of the arrest.
 {¶ 30} Acting as the trier of fact, the trial court is in the best position to resolve questions of fact and evaluate the credibility of witnesses during a suppression hearing. State v. Mills (1992),62 Ohio St.3d 357, 366. An appellate court is to give great deference to the judgment of the trier of fact, and a trial court's findings of fact will be accepted by an appellate court if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. (Citations omitted.)
 {¶ 31} In denying Hall's motion to suppress, the trial court cited to the Supreme Court of Ohio's decision in Maumee v. Weisner (1999),87 Ohio St.3d 295. In Weisner, police dispatch received a call from an eyewitness motorist who was following a vehicle that was "`weaving all over the road.'" Id. The eyewitness provided police dispatch with his name and telephone number. Id. Further, the eyewitness gave dispatch the make, color, and license plate of the vehicle "`weaving all over the road.'" Id. When the police officer located the vehicle, he followed the vehicle for approximately 30 to 40 seconds, but did not witness any erratic driving or weaving. Id. However, the police officer *Page 9 
stopped the vehicle and, subsequently, the driver was arrested for driving under the influence of alcohol. Id. At the hearing on the motion to suppress, the city called only the police officer to testify. Id. at 296.
 {¶ 32} The Weisner Court concluded, "[w]here an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." Id. at paragraph one of the syllabus. "Fundamentally, the Supreme Court of Ohio determined that `(a) telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability.'" State v. Maloney, 11th Dist. No. 2007-G-2788,2008-Ohio-1492, at ¶ 25, quoting Weisner, 87 Ohio St.3d 295, at paragraph two of the syllabus. "`A citizen-informant who is the victim of or witness to a crime is presumed reliable.'" State v.Livengood, 11th Dist. No. 2002-L-044, 2003-Ohio-1208, at ¶ 11. (Citations omitted.)
 {¶ 33} After the presentation of evidence at the suppression hearing, the trial court correctly determined that "the driver's personal information was sufficient to insure his reliability and remove the information from classification as `anonymous.'" That finding was supported by competent, credible evidence. The evidence presented to the trial court revealed that Mr. Throw identified himself to dispatch; provided dispatch with a description of his truck; gave dispatch his exact location on Interstate 90; and was aware that dispatch had his telephone number.
 {¶ 34} Further, evidence was presented at the suppression hearing that, as Mr. Throw followed Hall, he provided dispatch with a firsthand account of the events taking place. Mr. Throw informed dispatch that he observed a black Grand Prix "all over the *Page 10 
road" and "swerving back and forth." Mr. Throw indicated to dispatch that he suspected the driver was impaired, and he further noted his concern for his safety when he informed dispatch that Hall was driving through a construction zone. He stated to dispatch that Hall's vehicle was exiting Interstate 90 at State Route 44. Although Mr. Throw continued travelling on Interstate 90, Officer Mescall identified the vehicle at the exit and, subsequently, effectuated a traffic stop. Therefore, the trial court correctly determined that Officer Mescall "was entitled to consider [Mr. Throw's] information as reliable and specific enough to justify the investigative stop of [Hall] without observing any corroborating facts himself."
 {¶ 35} We, therefore, determine that the information provided by Mr. Throw to dispatch and relayed to Officer Mescall had the same indicia of reliability as the eyewitness tip in Weisner. As such, Officer Mescall had a reasonable and articulable suspicion that Hall may be driving while impaired and, therefore, he was justified in effectuating a traffic stop of Hall's vehicle. The trial court did not err in denying Hall's motion to suppress since there was competent, credible evidence in the record to support such a finding.
 {¶ 36} Under this assignment of error, Hall also maintains that the trial court erred in considering Mr. Throw a reliable witness since he did not testify at the suppression hearing. This argument advanced by Hall has been previously rejected by this court in Willoughby v.Liberatore, 11th Dist. No. 2001-L-171, 2002-Ohio-3847.
 {¶ 37} This court has held that "the state's obligation at the suppression hearing was to demonstrate that [the patrolman] had a reasonable suspicion of criminal activity. The determination of this issue depends on [the patrolman's] belief as to the reliability of *Page 11 
the information he had received at the time he conducted his investigative stop of appellant." Id. at ¶ 13. "A patrolman's or officer's belief as to the reliability of the information received depends on the information that the dispatcher relayed, not on the complaining witness' motivation or veracity." State v. Hines, 11th Dist. No. 2004-L-066, 2005-Ohio-4208, at ¶ 20. Further, in Weisner, the identified citizen informant did not testify at the suppression hearing. Id. at ¶ 21. (Citations omitted.)
 {¶ 38} We have determined that the information received from dispatch upon which Officer Mescall relied had a high degree of reliability and, thus, the stop of Hall's vehicle was justified. For the foregoing reasons, Hall's third assignment of error is without merit.
 {¶ 39} The judgment of the Willoughby Municipal Court is hereby affirmed.
 CYNTHIA WESTCOTT RICE, J., MARY JANE TRAPP, J., concur. *Page 1