The STATE of Ohio, Appellee,

v.

HOLNAPY, Appellant.

[Cite as *State v. Holnapy*, 194 Ohio App.3d 444, 2011-Ohio-2995.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2010–L–072.

Decided June 17, 2011.

446

Charles E. Coulson, Lake County Prosecuting Attorney, and Teri R. Daniel, Assistant Prosecuting Attorney, for appellee.

Albert L. Purola, for appellant.

---

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Appellant, Jon W. Holnapy, appeals the judgment of the Lake County Court of Common Pleas denying his motion to suppress and his conviction by a jury of operating a motor vehicle while under the influence of alcohol ("OVI"). At issue is whether the police had probable cause to arrest him and whether

sufficient evidence was presented to support his conviction. For the reasons that follow, we affirm.

{¶ 2} Appellant was indicted for operating a motor vehicle while under the influence of alcohol, a drug of abuse, or a combination of both, in violation of R.C. 4511.19(A)(1)(a), a felony of the fourth degree, with a specification that he had previously been convicted of five or more OVI offenses within the last 20 years, in violation of R.C. 2941.1413.

{¶ 3} Appellant pleaded not guilty and filed a motion to suppress evidence. A hearing was held on the motion, following which appellant's motion was over-ruled. Subsequently, the case proceeded to jury trial.

{¶ 4} Scot Wallace testified that during the afternoon of September 28, 2009, while he was in the parking lot of the Lake County Department of Job and Family Services ("JFS") in downtown Painesville, he saw a car that was attempting to enter the parking lot hit a yellow concrete pole at the entrance. The driver backed up and then drove forward again, crashing into the pole a second time. The driver then backed up again, entered the parking lot, and parked his car. The driver exited his car and walked around to the front of the car, staggering. He then walked along the side of the building facing State Street out of Wallace's sight. As he was walking, the driver kept turning around, throwing his arms up in the air, and talking out loud to himself.

{¶ 5} Wallace called the police and reported the crash. He described the male as wearing a plaid flannel shirt and blue jeans. He said that the male appeared to be intoxicated and was walking away from the JFS parking lot toward State Street.

{¶ 6} Painesville Police Officer Larry Armstrong was dispatched to JFS at 2:34 p.m. While approaching JFS, he saw a male matching the driver's description walking away from JFS north on State Street. The officer pulled into the parking lot of a bakery on State Street just a few buildings north of JFS. While seated in his cruiser, Armstrong watched the male as he walked toward him. While walking, the male was swaying, walking side to side on the sidewalk, and stumbling.

{¶ 7} Armstrong stepped out of his cruiser and walked to the sidewalk as the male approached him. The officer recognized the male as appellant due to previous encounters with him.

{¶ 8} Armstrong asked appellant where he was coming from. Appellant said that he was coming from Family Dollar and was heading home on Sanford Street. Armstrong said he knew that appellant was lying because he had seen him walking north on State Street, which is nowhere near Family Dollar. He also

said that appellant's story made no sense because the path appellant described was far out of his way.

{¶ 9} Armstrong testified that appellant appeared to be intoxicated. His eyes were bloodshot, he was slurring his speech, and he was swaying as he stood. While Armstrong was talking to appellant, Painesville Police Officer Michael Bailey arrived and joined the conversation. Armstrong asked appellant whether he had been drinking, and appellant said that he had had three beers within the last hour.

{¶ 10} Bailey testified that appellant exactly matched the description that he had been given. He asked appellant whether he had been involved in the crash in the JFS parking lot, and appellant said that he had not. Bailey said that appellant had bloodshot eyes and was swaying as he stood. Appellant said that he was on medication and that he was surprised that the beers had affected him the way they had.

{¶ 11} Both officers testified that in their opinion, appellant was under the influence of alcohol, a drug of abuse, or a combination of both.

{¶ 12} Armstrong checked on appellant's driving status and was advised by dispatch that his license was suspended.

{¶ 13} Based on the foregoing, Bailey decided that they had sufficient information to detain appellant in order to continue their investigation at the crash scene. The officers asked appellant to get into Bailey's car so they could drive him to JFS, and he agreed. Bailey said that appellant was neither handcuffed nor arrested. He drove appellant to JFS, which was two blocks away.

{¶ 14} Upon arrival, the officers observed damage to a yellow cement pole at the entrance of the parking lot. They also observed vehicle debris, including broken glass, near the pole.

{¶ 15} Appellant pointed out the vehicle that was involved in the crash and said that it was his wife's car. The vehicle had sustained heavy front-end damage to the bumper and hood. It also had a yellow paint transfer, which was consistent with the vehicle having struck the pole.

{¶ 16} Armstrong ran the vehicle's license plate and determined that its owner was Tenisha Holnapy, who, he said, is appellant's wife.

{¶ 17} The witness Scot Wallace was still on the scene. Bailey asked Wallace whether he could identify the driver if he saw him again, and Wallace said that he could. Bailey then walked him over to his cruiser, and Wallace identified appellant.

{¶ 18} Bailey asked appellant to perform field sobriety tests, but he refused due to an alleged prior injury. Bailey then arrested appellant. He said that

probable cause was based on the following factors: appellant matched Wallace's description; appellant appeared to be under the influence of alcohol, drugs, or both; the vehicle involved in the crash was owned by appellant's wife; and appellant was driving under suspension. The location where he was found was also a factor.

{¶ 19} Armstrong requested that appellant's vehicle be towed. He asked appellant, who was still seated in the back of Bailey's cruiser, for the key to his car for the tow-truck operator. Appellant retrieved the key from his shoe.

{¶ 20} Bailey then transported appellant to the police station. Appellant was advised of and waived his Miranda rights. At the station, for the first time, Bailey detected a faint odor of alcohol coming from appellant's person. Appellant admitted that he was the driver of the vehicle that was involved in the crash. He said that he drove his wife's car within one hour after drinking three beers. He said that he was driving from his house on Sanford and was going to JFS. When asked whether he was on medication, appellant said that he was on Percocet and that his last dose was at 6:00 a.m. that day. Bailey asked appellant to take a breathalyzer test, but he refused.

{¶ 21} Both officers testified that appellant did not appear to be injured and did not complain of any injury or request any medical attention. They also said that he answered their questions appropriately and did not appear to be confused.

{¶ 22} The parties stipulated that appellant has been convicted of five OVI offenses within the last 20 years.

{¶ 23} For the defense, Tenisha Holnapy testified that appellant is her husband and lives with her. She said that on September 28, 2009, Armstrong called her and said that her vehicle had been involved in a crash. She said that before the crash, there was no damage to the car's front bumper or hood. On cross-examination, she said that she hides the key to her car from appellant because his license has been suspended and he has numerous prior OVI offenses. She said he was supposed to ride his bicycle to JFS, not drive her car.

{¶ 24} Dr. Chris Adelman testified that appellant's symptoms as noted in the police report are consistent with head trauma, but on cross-examination, he said that the same symptoms are also consistent with being under the influence. The CT scans and MRIs for appellant's brain were normal, and there was no evidence of brain injury.

{¶ 25} The jury returned its verdict, finding appellant guilty of OVI as charged with the specification. The trial court sentenced appellant to 24 months for the OVI and three years on the specification, the terms to be served consecutively, for a total sentence of five years in prison.

{¶ 26} Appellant appeals his conviction and asserts three assignments of error. For his first assigned error, he alleges:

{¶ 27} "The trial court erred in denying the Pre–Trial Motion to Suppress evidence."

{¶ 28} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The appellate court must accept the trial court's factual findings, provided that they are supported by competent, credible evidence. Id. Thereafter, the appellate court must determine, without deference to the trial court, whether the applicable legal standard has been met. *Bainbridge v. Kaseda*, 11th Dist. No. 2007–G–2797, 2008-Ohio-2136, 2008 WL 1934491, at ¶ 20. Thus, we review the trial court's application of the law to the facts de novo. *State v. McNamara* (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539.

{¶ 29} The trial court found that the officers had probable cause to arrest appellant based on the following: (1) Wallace's report of the crash and description of the driver, (2) the proximity of appellant in time and space to the crash, (3) appellant had bloodshot eyes, (4) he was swaying while standing, (5) appellant's statement to Armstrong about where he was coming from and his destination made no sense, (6) appellant admitted drinking three beers, (7) appellant was driving while his license was suspended, (8) the eyewitness show-up identification, and (9) appellant's admission that the car involved in the crash belonged to his wife. Based on the analysis that follows, we agree with the trial court's finding.

{¶ 30} The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." However, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio* (1968), 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889, fn. 16.

{¶ 31} The United States Supreme Court has recognized three categories of police-citizen encounters in determining when the Fourth Amendment guarantees are implicated. *Florida v. Royer* (1982), 460 U.S. 491, 501–507, 103 S.Ct. 1319, 75 L.Ed.2d 229.

{¶ 32} The first type of contact is the consensual encounter, endorsed by the Supreme Court in *Florida v. Bostick* (1991), 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389. Here, the interaction between the police officer and the citizen is consensual in nature, and it is therefore not a seizure for Fourth Amendment purposes. Examples of such encounters include approaching an individual in a public place, asking a few questions of the individual, and requesting that he

provide some form of identification. Id. at 434–435. The hallmark of a consensual encounter is that a reasonable citizen must feel "free to decline the officers' requests or otherwise terminate the encounter." Id. at 439.

{¶ 33} The Supreme Court has identified a variety of factors that may cause an encounter between the police and a citizen to lose its consensual character. Among the factors are the presence of multiple police officers, the displaying of a weapon by the police, the use of language suggesting that compliance with police requests is compelled, and the physical touching of the citizen. *United States v. Mendenhall* (1980), 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497. An encounter that is consensual at the outset can become a seizure if the police use one or more of these coercive tactics. Id.

{¶ 34} The second type of encounter is a *"Terry* stop" or an investigatory detention. *Royer,* 460 U.S. at 511, 103 S.Ct. 1319, 75 L.Ed.2d 229. The investigatory detention is more intrusive than a consensual encounter, but less intrusive than an arrest. The investigatory detention must be limited in duration and scope and can last only as long as is necessary for an officer to confirm or dispel his suspicions that criminal activity is afoot. A police officer may perform an investigatory detention so long as the officer has a reasonable, articulable suspicion of criminal activity. *Terry,* 392 U.S. at 21, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 35} The third type of encounter is an arrest. *State v. Barker* (1978), 53 Ohio St.2d 135, 137, 7 O.O.3d 213, 372 N.E.2d 1324. To perform such a seizure, an officer must have probable cause.

{¶ 36} A court must employ a "totality of the circumstances" analysis when determining whether a particular encounter constitutes a seizure. *Bostick,* 501 U.S. at 437, 111 S.Ct. 2382, 115 L.Ed.2d 389; *Mendenhall,* 446 U.S. at 557, 100 S.Ct. 1870, 64 L.Ed.2d 497; *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus.

{¶ 37} In *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 720 N.E.2d 507, police dispatch received a call from an eyewitness motorist who was following a vehicle that was "weaving all over the road." The eyewitness gave his name to the dispatcher. Further, he provided a description of the driver's vehicle. When the police officer located the vehicle, he followed it for about 30 seconds, but did not witness any erratic driving. However, the police officer stopped the vehicle and, subsequently, the driver was arrested for driving under the influence of alcohol.

{¶ 38} The court in *Weisner* held: "A telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient

indicia of reliability." Id. at paragraph two of the syllabus. Further, the court held:

{¶ 39} "Taken together, these factors persuade us that the informant's tip is trustworthy and due significant weight. The informant was an identified citizen who based his knowledge of the facts he described upon his own observations as the events occurred. As a result, his tip merits a high degree of credibility and value, rendering it sufficient to withstand the Fourth Amendment challenge without independent police corroboration. Accordingly, the dispatch based upon this tip was issued on sufficient facts to justify Patrolman Roberts' investigative stop." Id. at 302–303.

{¶ 40} This court has repeatedly followed the Supreme Court's holding in *Weisner.* See *Kirtland Hills v. Hall,* 11th Dist. No. 2008–L–005, 2008-Ohio-3391, 2008 WL 2635477, at ¶ 35; *Eastlake v. Pavlisin,* 11th Dist. No. 2001–L–207, 2002-Ohio-4702, 2002 WL 31008775. In *Pavlisin,* this court held: " '[I]nformation from an ordinary citizen who personally observed what appears to be criminal conduct carries with it an indicia of reliability and is presumed to be reliable.' " Id. at ¶ 20, quoting *Weisner,* 87 Ohio St.3d at 300, 720 N.E.2d 507.

{¶ 41} It is undisputed that Wallace was an identified-citizen informant who personally witnessed the crash. He identified himself to dispatch, provided his location, gave dispatch a firsthand account of the events immediately after they occurred, and described the driver. In these circumstances, the information provided by Wallace to dispatch and relayed to Officers Armstrong and Bailey had the same indicia of reliability as the eyewitness tip in *Weisner.* Therefore, the officers here had a reasonable and articulable suspicion that appellant had been driving under the influence.

{¶ 42} Further, after being dispatched, the responding officers learned additional facts that confirmed their suspicion. While Armstrong was responding to JFS, he saw a male matching the description walking north on State Street, away from JFS. Armstrong parked his vehicle a few buildings away from JFS and approached appellant just two minutes after he had received the dispatch.

{¶ 43} While appellant was walking on State Street, away from the crash scene, he was swaying and stumbling. When Armstrong approached him, appellant appeared to be intoxicated. His eyes were bloodshot, he was slurring his speech, and he was swaying as he stood.

{¶ 44} Bailey also testified that when he first saw appellant with Armstrong, appellant exactly matched Wallace's description. He also said that appellant was swaying, his eyes were bloodshot, and he was slurring his words.

{¶ 45} Appellant concedes that the ensuing conversation between him and the officers on State Street was authorized as a consensual encounter. As a result, the officers' observations and appellant's statements were admissible in evidence. *Mendenhall*, 446 U.S. at 559–560, 100 S.Ct. 1870, 64 L.Ed.2d 497.

{¶ 46} Based on the foregoing evidence, the officers decided to take appellant back to the scene to conclude their investigation. Appellant argues that his removal from the place where he was found amounted to an arrest without probable cause and that everything learned after his removal should have been suppressed. We do not agree. First, in *State v. Pugh* (Apr. 20, 1982), 10th Dist. No. 81AP–779, 1982 WL 4117, after determining that the officer had specific and articulable facts justifying his suspicion that the defendant had committed a trespass, the Tenth District held that a brief detention to take the defendant back to the scene for a show-up identification was justified under *Terry*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. *Pugh* at *13–15. We note that here, the drive from the bakery to JFS took only 30 seconds, and the officers completed their investigation at the crash scene in five minutes.

{¶ 47} Second, when the officers decided to take appellant to the crash scene to continue their investigation, Armstrong asked appellant whether he would go with them, and appellant agreed. He therefore consented to any seizure of his person resulting from his being placed in Bailey's cruiser. Consent is an exception to the probable-cause and warrant requirements of the Federal and Ohio Constitutions. *State v. Lett*, 11th Dist. No. 2008–T–0116, 2009-Ohio-2796, 2009 WL 1655494, at ¶ 32.

{¶ 48} During the ensuing investigation, the officers' reasonable suspicion ripened into probable cause. They observed damage to the pole and vehicle debris near it. Appellant pointed out the vehicle involved in the crash and said that it was his wife's car. The officers observed front-end damage and a yellow paint transfer, which were consistent with appellant having struck the pole. Armstrong ran the license plate and found that the vehicle was owned by appellant's wife. Further, Wallace identified appellant at the scene in a show-up.

{¶ 49} In addition, Bailey asked appellant to take field sobriety tests, but he refused. After appellant refused to take these tests, Bailey arrested appellant. This court has held that the "refusal to submit to field sobriety tests is another factor that may be considered in determining the existence of probable cause in an arrest for driving under the influence of alcohol." *State v. Molk*, 11th Dist. No. 2001–L–146, 2002-Ohio-6926, 2002 WL 31813021, at ¶ 19.

{¶ 50} We therefore hold that the trial court did not err in finding that the officers had probable cause to arrest appellant and in denying his motion to suppress.

{¶ 51} Appellant argues that a faint odor of alcohol alone is insufficient to provide probable cause. However, the evidence here was not limited to a slight odor of alcohol. In any event, the first time Bailey noted this odor was at the police station *after* appellant had been arrested. Probable cause can be measured only by objective facts known to police *prior to* a seizure. *Byars v. United States* (1927), 273 U.S. 28, 29, 47 S.Ct. 248, 71 L.Ed. 520. Consequently, the fact that Bailey detected an odor of alcohol on appellant after his arrest is irrelevant to the analysis.

{¶ 52} Appellant also argues that the officers could not consider the fact that he was driving under suspension ("DUS"), because there was no evidence that he was driving on a highway or street, as required for DUS under 4507.02(D)(1). However, it can reasonably be inferred that since appellant was seen entering the parking lot at the time of the crash, he was DUS on a street in this state.

{¶ 53} Appellant's first assignment of error is overruled.

{¶ 54} For his second assigned error, appellant contends:

{¶ 55} "The trial evidence adduced was constitutionally insufficient to support a verdict of guilty."

{¶ 56} An appellate court reviewing the sufficiency of the evidence examines the evidence admitted at trial and determines whether, after viewing the evidence most favorably to the state, the jury could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. "On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (Cook, J., concurring). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." Id. at 386.

{¶ 57} Appellant asserts that the trial court failed to properly apply the sufficiency test in *Jenks* by allowing "some" evidence to satisfy the sufficiency requirement. We do not agree.

{¶ 58} Appellant argues that the following statement of the trial court supports his argument: "Go ahead and make the Rule 29. * * * Admissions of * * * alcohol and narcotics. And expert opinion of under the influence by 2 officers. * * * Overruled." However, the fact that the trial court provided this shorthand summary of the evidence in support of its ruling does not show that it applied a reduced standard of sufficiency. Because appellant has failed to demonstrate that the trial court applied a lesser standard, this court must presume the validity

of the proceedings below and that the court correctly applied the law. *Warren v. Clay*, 11th Dist. No. 2003–T–0134, 2004-Ohio-4386, 2004 WL 1870370, at ¶ 7.

{¶ 59} In any event, the record demonstrates that the state presented adequate evidence to survive appellant's Crim.R. 29 motion. R.C. 4511.19(A)(1)(a) provides: "No person shall operate any vehicle * * * within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."

{¶ 60} With respect to the operation element, Wallace testified that he saw appellant drive the vehicle, crash it into a pole twice, and then park it. At JFS, appellant identified the car involved in the crash and said that it was his wife's car. When asked for the key to the car, he produced it from his shoe. At the police station, he admitted driving from his house to JFS.

{¶ 61} With respect to the "under-the-influence" element, Wallace testified that in his opinion, based on his observations, which included appellant's staggering, appellant was intoxicated. Both officers testified that appellant exhibited signs of intoxication and that in their opinion, he was under the influence of alcohol. Appellant admitted consuming three beers within the hour before the crash. He also testified that he was surprised that the beers had affected him the way they had. Further, appellant refused to take field sobriety tests. A defendant's refusal to perform field sobriety tests is admissible as evidence of his guilt. *State v. Flynt*, 11th Dist. No. 2001–P–0116, 2003-Ohio-1391, 2003 WL 1456801, at ¶ 16. In addition, at the station, Bailey detected a slight odor of alcohol coming from appellant. Finally, appellant's refusal to take the breathalyzer test was admissible as evidence of his guilt. This court has held:

{¶ 62} " 'With respect to the admissibility of evidence at trial of a defendant's refusal to take a chemical test, the United States Supreme Court has held that such evidence does not violate the defendant's Fifth Amendment right against self-incrimination nor the Fourteenth Amendment right to due process. * * * Similarly, this court has concluded that * * * evidence of a refusal to submit to a chemical test can be used against a defendant at trial.' " *State v. Spurlock* (Dec. 15, 1995), 11th Dist. No. 95–P–0067, 1995 WL 815337, *2, quoting *Maumee v. Anistik* (1994), 69 Ohio St.3d 339, 342, 632 N.E.2d 497.

{¶ 63} Appellant argues that based on Dr. Adelman's testimony, the evidence was just as consistent with a head injury as with being intoxicated. However, on a Crim.R. 29 motion, the evidence is viewed most favorably to the state. Moreover, it was undisputed at trial that appellant did not appear to be injured, never complained of any injury, and never requested medical attention.

{¶ 64} Next, although appellant argues that according to Adelman, the effect of Percocet would have dissipated within four hours, i.e., by 10:00 a.m., appellant

admitted being on medication, consuming three beers within the hour, and that the beers affected him. In any event, despite Adelman's testimony, the state presented the opinion testimony of two experienced police officers that appellant was under the influence.

{¶ 65} We therefore hold the that trial court did not err in overruling appellant's motion for acquittal.

{¶ 66} Appellant's second assignment of error is overruled.

{¶ 67} For his third and final assignment of error, appellant alleges:

{¶ 68} "The trial court erred to the prejudice of Holnapy by overruling a trial objection to the prosecutor's eliciting testimony regarding the desirability of taking a breath test so he (Holnapy) could tell the jury he 'passed.'"

{¶ 69} Appellant argues that the trial court erred by overruling his objection to the following testimony of Officer Bailey:

{¶ 70} "[PROSECUTOR]: Officer, would you consider it to be a benefit of taking a breath test that you can come in and stand in front of these folks and say I was nowhere close to .08?

{¶ 71} "[DEFENSE COUNSEL]: Objection. * * *.

{¶ 72} " * * *

{¶ 73} "PATROLMAN BAILEY: Yes, sir."

{¶ 74} Appellant argues that this testimony violated his due-process rights by shifting the burden of proof to him and by implicitly commenting on his failure to testify. However, appellant fails to put this testimony in context. The question was presented to the officer by the prosecutor on re-direct examination only after the defense had previously raised the issue on cross-examination, as follows:

{¶ 75} "[DEFENSE COUNSEL]: So had [appellant] taken the test he wouldn't have been un-arrested, correct?

{¶ 76} "PATROLMAN BAILEY: Right.

{¶ 77} "[DEFENSE COUNSEL]: So there was no benefit to him taking the test. Correct?

{¶ 78} "PATROLMAN BAILEY: Yeah, I guess. * * *."

{¶ 79} Thus, on cross-examination, in an effort to explain his refusal to take the breathalyzer test, appellant elicited from Officer Bailey that appellant would not have realized a benefit from taking it. In doing so, appellant "opened the door" to all relevant inquiry on the issue within the court's discretion. *State v. Woodard,* 11th Dist. No. 2009–A–0047, 2010-Ohio-2949, 2010 WL 2557715, at ¶ 47; see also *State v. Fannin* (June 11, 1999), 4th Dist. No. 98 CA 2456, 1999 WL

402231. Thus, while the state's question may not otherwise have been admissible, because appellant first raised the issue, it became open to all relevant inquiry. *Woodard.*

{¶ 80} In any event, because the admission of evidence that a defendant refused to take the breathalyzer test and counsel's comment concerning that refusal do not violate his constitutional rights, *Spurlock,* 1995 WL 815337, and *Westerville v. Cunningham* (1968), 15 Ohio St.2d 121, 124, 44 O.O.2d 119, 239 N.E.2d 40, the prosecutor's question about the benefit of taking the test did not violate appellant's constitutional rights because defense counsel opened the door on the issue.

{¶ 81} We therefore hold that the trial court did not abuse its discretion in admitting the challenged testimony.

{¶ 82} Appellant's third assignment of error is overruled.

{¶ 83} For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Judgment affirmed.

CANNON, P.J., and GRENDELL, J., concur.