[Cite as *State v. Parsons*, 2016-Ohio-8109.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

PORTAGE COUNTY, OHIO


STATE OF OHIO,                    :        **O P I N I O N**

            Plaintiff-Appellee,       :

     - vs -                          :        **CASE NO.  2015-P-0084**

LARRY E. PARSONS, JR.,            :

            Defendant-Appellant.      :


Criminal Appeal from the Portage County Municipal Court, Kent Division, Case No. K 2014 CRB 1547.

Judgment: Affirmed.


*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Dawn M. King,* 209 South Main Street, Suite 801, Akron, OH 44308 (For Defendant-Appellant).


DIANE V. GRENDELL, J.

{¶1}  Defendant-appellant, Larry E. Parsons, appeals his convictions in the Portage County Municipal Court, Kent Division, as well as the trial court's denial of his Motion to Suppress.  The issues to be determined by this court are whether a stop was properly conducted when the defendant violated a traffic law and the officer suspects an individual may be in danger, and whether a defendant is properly convicted of Resisting Arrest based on an arrest for Obstructing Official Business where he prevented police

from entering a home to conduct a warrantless arrest of another person. For the following reasons, we affirm the decision of the court below.

{¶2} On August 15, 2014, Complaints were filed in the Portage County Municipal Court, Kent Division, asserting that Parsons had committed the following offenses: Resisting Arrest, a misdemeanor of the second degree, in violation of R.C. 2921.33(A); two counts of Aggravated Menacing, misdemeanors of the first degree, in violation of R.C. 2903.21(A); and Obstructing Official Business, a misdemeanor of the second degree, in violation of R.C. 2921.31(A). The grand jury subsequently charged him with a second count of Obstructing Official Business.

{¶3} Parsons filed a Motion to Suppress on October 29, 2014. A hearing on the Motion was held on December 18, 2014.[1]

{¶4} Officer Steven Gyoker, a police officer with the Brimfield Township Police Department, testified that on August 14, 2014, at 8:48 p.m., he observed a male and a female, later identified as Larry Parsons and Angelia Caponi, walking down the side of the road, with the male appearing to be holding up the female, who was having difficulty walking. Officer Gyoker began to follow them and observed them walking down the middle of the road. He stopped and yelled at them to come back to his vehicle, wanting to check if Caponi had a medical issue or if "she was being held against her will." They continued walking and he again followed them and requested that they stop. After the two reached their residence, Caponi started to enter and Officer Gyoker told her to come back, that he needed to see her identification, and that if she did not comply, she would be arrested. He tried to enter the home but was blocked by Parsons, who put his

---

1. The hearing also involved Motions to Suppress of the other defendants in this matter, Angelia Caponi and Gina Caponi.

2

body in front of him and "kind of shoved [him] back." Parsons was placed under arrest for obstruction.

{¶5} Officer Matthew Kennedy, a patrolman with the Brimfield Police Department, arrived at the scene to assist Officer Gyoker, and saw him having difficulty with Parsons. Officer Gyoker asked Officer Kennedy to arrest another individual present, Christopher Bisard, who was "struggling" with Caponi inside the house and shoving her. He subsequently arrested them both.

{¶6} The court issued a Judgment Entry on February 5, 2015, in which it denied the Motion to Suppress. The court made factual findings, in pertinent part, that Officer Gyoker observed Parsons assisting Caponi, she had difficulty walking, and Officer Gyoker exited his vehicle, asking them to stop so he could investigate if Caponi was okay. The court also found that the two did not stop and "continued to walk down the street." The court concluded that Officer Gyoker had "reasonable grounds" to order Parsons and Caponi to stop "not only for investigative purposes to determine if Angelia Caponi was ill or in need of assistance, but also because both [Parsons and Caponi] were walking down the middle of the street in violation of law."

{¶7} A trial was held for Parsons and Gina and Angelia Caponi, on September 9 and 10, 2015. The following pertinent testimony was presented:

{¶8} Officer Gyoker testified to the same circumstances outlined above regarding his observations of Caponi being held up by Parsons, the two refusing to stop, and that they walked in the middle of the road. After they walked into the front yard of the residence where they lived, Parsons was yelling that Officer Gyoker was trespassing and violating the law, and was acting "agitated." When Officer Gyoker

3

approached the house to arrest Caponi, Parsons stuck his arm in front of him and "pushes [him] back," preventing him from entering the home. Officer Gyoker described that Parsons "grab[bed] [his] arm, shove[d] it away."

{¶9} Officer Gyoker informed Parsons that he was under arrest, based on obstructing him from making contact with Caponi. Parsons "tense[d] up his body" and pulled away while Officer Gyoker was trying to handcuff him. Another individual, Gina Caponi, exited the house and tried to get between Officer Gyoker and Parsons, grabbed at his belt, and was knocking his hand with the taser away.

{¶10} Parsons did not comply with verbal commands and continued to call Officer Gyoker names after being handcuffed. Parsons threatened him while in the car, stating that he would "be sorry." After he was placed in a holding cell, Parsons stated that Officer Gyoker "better hope [he] never get[s] out" and he was "going to find out where [Officer Gyoker] lives."

{¶11} Officer Kennedy received a call at around 9:00 p.m. on August 14 to assist Officer Gyoker. When he arrived, he witnessed Parsons, who had already been handcuffed, struggling with Officer Gyoker. He saw Officer Gyoker also struggling to handcuff Gina Caponi while trying to hold Parsons back. Officer Gyoker said "arrest them" and pointed to the front door, where, inside the house, Officer Kennedy observed Angelia Caponi and Christopher Bisard fighting. Bisard prevented Caponi from "get[ting] out of the door of the outside." (sic). Officer Kennedy arrested Bisard and then Caponi for interfering with that arrest.

{¶12} At the conclusion of the State's case, Parsons moved for acquittal pursuant to Crim.R. 29(A). The court granted the motion as to one count of Obstructing

4

Official Business and for Aggravated Menacing as it related to Officer Kennedy, amended the Aggravated Menacing charge as to Officer Gyoker to misdemeanor Menacing, and denied the motion as to the remaining offenses.

{¶13} Bisard, Caponi's son and Parsons' nephew, testified for the defense. After dinner the night of the incident, he believed Caponi and Parsons were outside their home working in the garden. While he was inside, he heard noise, looked outside, and saw Parsons being "tackled from behind" by Officer Gyoker. He began to videotape the incident. He observed Officer Gyoker telling Parsons to "stop resisting" and Parsons exclaiming that he was not, keeping his hands behind his back the whole time.

{¶14} On September 11, 2015, the jury found Parsons guilty of Menacing and Resisting Arrest and not guilty of Obstructing Official Business. The court issued a Judgment memorializing the verdict on September 14, 2015.

{¶15} Following a sentencing hearing, the court issued a November 17, 2015 Journal Entry, sentencing Parsons to serve 30 days in jail, as well as pay a $250 fine.

{¶16} Parsons timely appeals and raises the following assignments of error:

{¶17} "[1.] The trial court committed prejudicial error by denying Parsons' motion to suppress based upon a finding that the police officer ha[d] reasonable grounds to stop Parsons[] and thereby violating appellant's Fourth and Fourteenth Amendment rights and Article I, Section 14 of the Ohio Constitution against unreasonable searches and seizures * * *.

{¶18} "[2.] The trial court erred as a matter of law in denying Parsons' Crim.R. 29 Motion because the state failed to establish on the record sufficient evidence to support the charges levied against [Parsons] in violation of the due process clause of

5

the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10, & 16 of the Ohio Constitution.

**{¶19}** "[3.] Parsons' convictions are against the manifest weight of the evidence possession in violation of the due process clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10, & 16 of the Ohio Constitution." (sic)

**{¶20}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, "the trial court is best able to decide facts and evaluate the credibility of witnesses." *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 41. "Its findings of fact are to be accepted if they are supported by competent, credible evidence, and we are to independently determine whether they satisfy the applicable legal standard." *Id.*, citing *Burnside* at ¶ 8; *State v. Wysin*, 11th Dist. Portage No. 2013-P-0037, 2013-Ohio-5363, ¶ 27 ("[o]nce the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts") (citation omitted).

**{¶21}** The Fourth Amendment to the United States Constitution provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**{¶22}** An officer who conducts a "*Terry* stop," or an investigatory stop, "must be able to 'point to specific and articulable facts, which taken together with rational inferences with those facts, reasonably warrant an intrusion.'" *In re Jackson*, 11th Dist.

6

Portage No. 2006-P-0119, 2007-Ohio-4955, ¶ 15, citing *Terry* at 21.  Such a stop "must be limited in duration and scope and can last only as long as is necessary for an officer to confirm or dispel his suspicions that criminal activity is afoot."  *State v. Holnapy*, 194 Ohio App.3d 444, 2011-Ohio-2995, 956 N.E.2d 897, ¶ 34 (11th Dist.)  "The reasonable suspicion necessary" to conduct an investigatory stop "involves a consideration of 'the totality of the circumstances.'"  *Maumee v. Weisner*, 87 Ohio St.3d 295, 299, 720 N.E.2d 507 (1999), citing *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

**{¶23}** Parsons argues that his Motion to Suppress should have been granted because there were no grounds, other than a "hunch," to conduct an investigatory stop pursuant to *Terry* and Officer Gyoker "simply had no legal right to stop and question * * * Parsons."[2]

**{¶24}** As an initial matter, it is not entirely clear to what extent Parsons was "stopped," since he did not respond to Officer Gyoker's request to stop and was arrested immediately after he tried to prevent Officer Gyoker from following Caponi into the home to arrest her, an event that occurred without Officer Gyoker ever successfully stopping or meaningfully interacting with the two individuals.  His mere decision to approach Parsons and attempt to interact with and obtain information from him does not automatically equate to a finding that a stop/seizure occurred for the purposes of the Fourth Amendment.  *See State v. Phipps*, 11th Dist. Portage No. 2006-P-0098, 2007-Ohio-3842, ¶ 19 ("the act of a police officer approaching an individual in a parked

---

2. The State raises various arguments as to the validity of the arrest and entry into the home.  Parsons' first assignment of error argues only that the stop was unconstitutional and should be suppressed.  To the extent that the other matters are relevant for determining whether Parsons' conviction for Resisting Arrest was supported by the evidence, this will be addressed in the remaining assignments of error.

7

vehicle and asking him questions does not constitute a 'seizure' for the purposes of the Fourth Amendment").  Regardless, even presuming a stop of Parsons briefly occurred prior to the arrest, there were proper grounds for such a stop.

{¶25}  An investigative stop is permissible under *Terry* when there is reasonable suspicion the individual is currently engaged in criminal activity.  *Terry v. Ohio*, 392 U.S. at 21.  Reasonable suspicion to stop an individual has been found to exist in cases involving misdemeanor traffic offenses, including where pedestrians are walking in the middle of a roadway.  *State v. Shorts*, 9th Dist. Lorain No. 11CA009965, 2011-Ohio-6202, ¶ 10-18; *State v. Moorer*, 10th Dist. Franklin No. 14AP-224, 2014-Ohio-4776, ¶ 21.  Officer Gyoker testified at the suppression hearing that he saw Parsons and Caponi "walking up the middle of the road once they turned onto Neville [the street where the residence was located]."  This would be a violation of R.C. 4511.50(C), which requires pedestrians to walk "as near as practicable to an outside edge of the roadway."  This provided proper grounds to conduct a stop of Parsons.

{¶26}  In addition, Officer Gyoker testified that he was concerned about Caponi's safety, noting both that he was not sure if she was being held against her will or if there was a medical issue, expressing concern that she "was having a great deal of difficulty walking," as well as that they were walking up the middle of the road with her in this state.  Under the community-caretaking/emergency aid exception to the Fourth Amendment, which has been applied to protect those in the community, police officers may "stop a person to render aid if they reasonably believe that there is an immediate need for their assistance to protect life or prevent serious injury."  *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, syllabus.  Given that Officer Gyoker

8

did testify to concerns, which the trial court believed in its role as the fact-finder, this concern for Caponi's safety would provide the grounds for a temporary, noninvasive stop of the pair to determine that Caponi was safe. *State v. Barzacchini*, 2014-Ohio-3467, 17 N.E.3d 1186, ¶ 22 (5th Dist.) (the officer's "generalized concern for safety could certainly have justified him in approaching the car and making contact with their occupants in a nonintrusive manner").

{¶27} Parsons also argues that he was not required to provide identification to Officer Gyoker, pursuant to R.C. 2921.29, which requires an individual to provide certain identifying information when an officer reasonably believes that person has committed or witnessed a criminal offense. This has no bearing on whether the stop was valid. R.C. 2921.29 merely sets forth that it is a crime to fail to provide it under certain circumstances, an offense for which Parsons was not charged. Even if Parsons' failure to provide identification was not a crime, Gyoker was still permitted to ask for identification, especially since there were valid grounds for the stop. *See also* R.C. 2935.26(A)(2) (an officer issuing a citation for a minor misdemeanor may arrest an individual who "cannot or will not offer satisfactory evidence of his identity").

{¶28} The first assignment of error is without merit.

{¶29} In his second and third assignments of error, Parsons argues that his convictions were against the sufficiency and manifest weight of the evidence. Primarily, he asserts that he was not lawfully arrested for Obstructing Official Business, since he stopped Officer Gyoker from unlawfully entering his home, and, thus, he could not be convicted of Resisting Arrest.

9

{¶30} Pursuant to Crim.R. 29(A), "[t]he court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In essence, sufficiency is a test of adequacy." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶31} In contrast, manifest weight of the evidence "addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?" *Id.* An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶32}** Parsons was convicted of Resisting Arrest. Pursuant to R.C. 2921.33(A): "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." As noted in the statute, an element of the offense of resisting arrest is that the underlying arrest must be lawful. However, "the state need not prove that the defendant was guilty of the offense for which the arrest is made to uphold a subsequent conviction for resisting arrest." *State v. Wooden*, 11th Dist. Portage No. 2003-P-0035, 2004-Ohio-5514, ¶ 32. Instead, "[t]he arresting officer must only have probable cause to believe that the defendant's conduct, for which the arrest is being made, amounted to an offense." *Id.*

**{¶33}** Parsons contends that the Obstructing Official Business charge, for which he was acquitted, was improper, and thus, the lack of a lawful arrest invalidates his conviction for Resisting Arrest.

**{¶34}** Regarding Obstructing Official Business, R.C. 2921.31(A) provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

**{¶35}** Parsons' argument centers upon the assumption that he should not have been arrested for preventing Officer Gyoker from entering his home to arrest Caponi since such an entry was not justified under the law or part of Gyoker's lawful duties.

**{¶36}** The Ohio Supreme Court has held that "[w]hen officers, having identified themselves, are in hot pursuit of a suspect who flees to a house in order to avoid arrest, the police may enter without a warrant, regardless of whether the offense for which the

11

suspect is being arrested is a misdemeanor." *Middletown v. Flinchum*, 95 Ohio St.3d 43, 765 N.E.2d 330 (2002), syllabus. This holding applies in cases involving minor misdemeanors. *State v. Lam*, 2d Dist. Montgomery No. 25336, 2013-Ohio-505, ¶ 19, 24.

{¶37} In this case, as noted above, there is an indication that Caponi committed at least one offense due to her conduct of walking in the street. It is unclear, however, specifically what Officer Gyoker intended to arrest Caponi for, as he indicated in his testimony that, as she gets "into the front door" he told her "she is under arrest if she does not come out." Even if Officer Gyoker had no legally valid grounds to enter the home and was not in "hot pursuit," Parsons' conduct still justified an arrest for obstruction. Ohio courts have held that when an unlawful entry to a home occurs, "absent bad faith on the part of a law enforcement officer, an occupant cannot obstruct the officer in the discharge of his duty, whether or not the officer's actions are lawful under the circumstances." *State v. Stevens,* 5th Dist. Morgan No. 07-CA-0004, 2008-Ohio-6027, ¶ 37, citing *State v. Pembaur*, 9 Ohio St.3d 136, 138, 459 N.E.2d 217 (1984); *State v. Burns*, 2d Dist. Montgomery No. 22674, 2010-Ohio-2831, ¶ 19. In this case, a thorough review of the facts outlined above does not demonstrate bad faith in attempting to enter the home to arrest Caponi and Parsons was not permitted to take it upon himself to prevent Officer Gyoker from doing so.

{¶38} Given that the arrest was valid, and considering the testimony presented, the Resisting Arrest conviction was supported by the evidence. Officer Gyoker testified that after he told Parsons he was under arrest and began to place him in handcuffs, Parsons "tense[d] up his body," and was "trying to pull away from [Officer Gyoker's] grip

12

as well." He also failed to comply with commands to the extent that Officer Gyoker threatened to use his taser. This conduct was sufficient to support a conviction for Resisting Arrest. *State v. Kornilov*, 11th Dist. Portage No. 2012-P-0029, 2012-Ohio-6218, ¶ 33. Parsons also provides no argument in his brief that he did not resist and points to no evidence that would render his conviction against the weight of the evidence, given the foregoing testimony.

{¶39} We note that Parsons was also convicted of Menacing. While he generally states that his "convictions" were against the weight and sufficiency of the evidence, he provides no argument relating to his Menacing conviction, which arose from his conduct in threatening Officer Gyoker after his arrest. It is unclear from his brief if he even intended to raise an error as to this conviction.[3] Thus, we decline to address this issue since Parsons provided no argumentation, as required by App.R. 12(A)(2) and 16(A).

{¶40} The second and third assignments of error are without merit.

{¶41} For the foregoing reasons, the judgment of the Portage County Municipal Court, Kent Division, is affirmed. Costs to be taxed against appellant.

CYNTHIA WESTCOTT RICE, P.J.,

THOMAS R. WRIGHT, J.,

concur.

---

3. Parsons takes issue with his "convictions" but addresses only Resisting Arrest and Obstructing Official Business, describing the elements necessary "to find Parsons is guilty" of the Obstructing offense. Parsons was not convicted of Obstructing Official Business and, as noted above, did not need to be found guilty to be convicted of Resisting Arrest.