[Cite as *State v. Shorts*, 2011-Ohio-6202.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 11CA009965 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TERRENCE T. SHORTS, JR. | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 09CR079495 |

DECISION AND JOURNAL ENTRY

Dated: December 5, 2011

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellant, Terrence Shorts, Jr., appeals his conviction in the Lorain County Court of Common Pleas. This Court affirms.

I

{¶2} On November 3, 2009, Detectives Corey Middlebrooks and Miguel Baez of the Lorain Police Department were patrolling in the Fulton Homes area of Lorain in an unmarked cruiser. Fulton Homes is a high crime, high drug trafficking area that had recently been the subject of many citizen complaints regarding the level of drug trafficking, trespassers, and gang activity. The detectives observed a black male exit the rear of a suspected drug house at 3195 Victory Avenue ("Victory"). The house was the residence of Troy Wardell, a known drug dealer who had been previously arrested for possession of drugs.

{¶3} The officers then circled around Fulton Homes and observed an individual fitting the same description walking south on Victory toward Factory Avenue ("Factory"). As the

individual came to the intersection of Victory and Factory, he turned left and began walking eastbound in the middle of Factory. The officers initiated their lights and pulled up next to the individual. The individual then "bladed," or shielded, his body from the officers and continued walking around the rear passenger side of a vehicle that was parked on the south side of the street in front of 1310 Factory. After the officers exited the cruiser and yelled at the individual to stop, the individual threw his hands in the air. As he threw his hands in the air, an object left his right hand and landed nearby in the tree lawn. While Detective Baez escorted the individual to the cruiser, Detective Middlebrooks retrieved the object, which turned out to be a pill bottle. The pill bottle contained foil packaging, which Detective Middlebrooks recognized to be consistent with the way drug dealers and drug abusers package heroin. At that juncture, Detective Baez handcuffed the individual for safety while Detective Middlebrooks field tested the contents of the bottle. He received a positive result for heroin.

{¶4} The individual was then identified as Shorts and arrested for possession of drugs in violation of R.C. 2925.11(A), a felony of the fifth degree, and one count of possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. Shorts was also issued a citation for walking in the roadway in violation of the Codified Ordinances of Lorain ("COL") § 371.05, a minor misdemeanor. The officers also learned that the parked vehicle belonged to Shorts.

{¶5} On December 16, 2009, Shorts was indicted by the Lorain County Grand Jury and charged with one count of possession of drugs in violation of R.C. 2925.11(A), and one count of possession of drug paraphernalia in violation of R.C. 2925.14(C)(1). Shorts entered a not guilty plea. On April 1, 2010, Shorts filed a motion to suppress. The trial court denied Shorts' motion on June 22, 2010. On November 18, 2010, Shorts pleaded no contest to count one of the

indictment and count two was dismissed. On February 9, 2011, Shorts was sentenced to one year of community control. Shorts' driver's license was also suspended for six months. The trial court stayed the execution of the sentence pending appeal.

{¶6} Shorts now appeals from his conviction and raises four assignments of error for our review. For ease of disposition, we combine our analysis of Shorts' first two assignments of error.

## II

### Assignment of Error Number One

"THE TRIAL COURT'S FINDINGS OF FACT WERE NOT SUPPORTED BY COMPETENT CREDIBLE EVIDENCE."

### Assignment of Error Number Two

"THE TRIAL COURT ERRED IN CONCLUDING THAT THE POLICE HAD REASONABLE ARTICULABLE SUSPICION TO STOP THE APPELLANT."

{¶7} In his first two assignment of error, Shorts argues that the trial court erred by denying his motion to suppress. We disagree.

{¶8} As this Court has consistently recognized, the Ohio Supreme Court has held that:

"Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706." *State v. Johnson*, 9th Dist. No. 25525, 2011-Ohio-3941, at ¶5, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8.

"[T]he weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts." *State v. Brooks*, 9th Dist. No. 07CA009137, 2007-Ohio-6208, at ¶12, quoting *State*

*v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Thus, the trial court is in the best position to make credibility determinations and is free to choose which witnesses to believe. *State v. Kurjian*, 9th Dist. No. 06CA0010-M, 2006-Ohio-6669, at ¶10. Accordingly, this Court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA0009454, 2009-Ohio-910, at ¶6, citing *Burnside* at ¶8.

{¶9} The State conceded that the encounter between the Detectives and Shorts was not a consensual encounter and constituted a stop for Fourth Amendment purposes. Shorts maintains that the Detectives did not have the requisite reasonable suspicion to stop him. "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez* (1981), 449 U.S. 411, 417. Reasonable suspicion requires only that the officers "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio* (1968), 392 U.S. 1, 21.

> "The Ohio Supreme Court has identified certain specific and articulable facts that would justify an investigatory stop by way of reasonable suspicion, factors which fall into four general categories: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances. No single factor is dispositive; the decision must be viewed based on the totality of the circumstances." (Internal citation omitted.) *State v. White*, 9th Dist. No. 05CA0060, 2006-Ohio-2966, at ¶16, citing *State v. Bobo* (1988), 37 Ohio St.3d 177, 178-80.

{¶10} Furthermore, "[a] police officer may conduct a constitutionally valid traffic stop when there is a reasonable suspicion that the individual violated a traffic law. *State v. Lloyd* (1998), 126 Ohio App.3d 95, 102; see, also, *Knowles v. Iowa* (1998), 525 U.S. 113 (concluding that the stopping of an individual for a misdemeanor traffic offense is 'analogous to a so-called 'Terry stop')" *State v. Price* (Sept. 21, 2000), 10th Dist. No. 99AP-806, at *1; Accord *State v.*

*Salas*, 9th Dist. No. 21891, 2004-Ohio-6274, at fn. 4 (reasonable suspicion standard applies when analyzing the violation of a city ordinance that prohibited jaywalking).

{¶11} COL § 371.05, WALKING ALONG HIGHWAYS, appears under Title Nine of the Lorain Traffic Code (Pedestrians, Bicycles and Motorcycles) and reads in relevant part as follows: "(a) Where a sidewalk is provided and its use is practicable, no pedestrian shall walk along and upon an adjacent roadway." The trial court, based on the facts recited above, concluded that:

> "Detective Middlebrooks testified that he observed [Shorts] walking in the middle of Factory Avenue in an eastbound direction. *** It must be noted that during this incident it was discovered that [Shorts'] vehicle was parked at or about 1310 Factory Ave. This address is not near the corner of Factory Ave. where an unmarked crosswalk may have been used. [T]here was no testimony offered that would suggest that the use of the sidewalk was not practicable under the circumstances. The testimony only supports a finding that [Shorts] was walking within the roadway, outside of any crosswalk. Thus, the officers had more than reasonable suspicion, as they had probable cause that [Shorts] had committed a violation of Lor Cod Ord § 371.05(e)[(sic)]. Although the offense was not an arrestable offense, clearly [Shorts] may be stopped and cited for said violation. Therefore the stop of [Shorts] was lawful."

The Court further concluded that once the pill bottle was retrieved and its contents field tested positive for heroin, the Detectives had probable cause to arrest Shorts.

{¶12} Shorts first takes issue with certain of the trial court's findings of fact and contends that they are not supported by competent, credible evidence; namely, that Detective Middlebrooks observed a black male exiting a suspected drug house; that the officers circled around Fulton Homes and observed an individual fitting the same description walking from Victory toward Factory; and that as the individual came to Factory, he began walking eastbound in the middle of Factory. We disagree and conclude that there was competent, credible evidence to support those findings.

{¶13} Detectives Baez and Middlebrooks testified at the suppression hearing. Both detectives testified that they were familiar with Wardell, a known drug dealer who had been previously arrested for drug activity, and that they knew 3195 Victory was Wardell's residence. It was certainly rational for the trial court to infer that drug activity might take place at the residence of a known drug dealer. Thus, the trial court's finding that Wardell's residence was a "suspected drug house" was supported by competent, credible evidence.

{¶14} Detective Baez, who was driving the cruiser, testified that he "observed a black male walking from – directly from the rear of the residence [at 3195 Victory Ave.] *** Now he began walking southbound on Victory Avenue on the sidewalk towards Factory." Detective Middlebrooks testified that "we observed [a male] exit [Wardell's] residence" and that he "watched him exit from the back door and walk towards Factory." He further testified that "[t]he same male that I identified exiting from [Wardell's] residence at some point I did see walking through the lawn back toward Fulton Homes or toward Factory Avenue." Detective Middlebrooks identified the male as being "African American" but did not recognize him as a regular resident or visitor to the area. Therefore, based on the foregoing testimony we conclude that there was competent, credible evidence to support the trial court's finding that a black male exited Wardell's residence and that he was the same male that was later apprehended on Factory.

{¶15} Shorts contests the foregoing findings because he argues that the officers stopped him primarily on suspicion of trespassing after he was seen exiting the residence of a known drug dealer in a high crime area, and that those facts, standing alone, do not constitute a lawful basis for concluding he was engaged in criminal conduct. In support of his argument, he relies on *Brown v. Texas* (1979), 443 U.S. 47, 52 (appellant observed walking in a high crime, public area and Court concluded officers lacked reasonable suspicion because there was no evidence

appellant was involved in criminal conduct or that he appeared suspicious). Yet, Shorts' argument that he was stopped primarily on suspicion of trespassing is not supported by the testimony presented at the suppression hearing. Detectives Baez and Middlebrooks both testified that they were initially interested in following and possibly speaking with Shorts after observing him exit the rear of Wardell's residence, which was located in a high crime, high drug activity area that had been the subject of citizen complaints. However, the testimony of both detectives was consistent that as the sequence of events unfolded, they did not initiate the stop until after Shorts was seen walking in the roadway on Factory, a citable violation under COL § 371.05(a).

{¶16} Detective Baez testified as follows on direct examination:

"Q: *** I believe you said at that point in time you felt [Shorts] could be summoned. What do you mean by that?

"A: He could actually be issued a citation for walking in the roadway.

"Q: Was that your objective, your goal, when you turned on the lights?

"A: Yes.

Detective Baez later testified on cross-examination:

"A: *** He was walking in the roadway. We didn't stop him until he was stopped into the roadway, sir.

"Q: So you stopped him for trespassing in the roadway?

"A: No, walking in the roadway.

Detective Middlebrooks testified as follows on cross-examination:

"Q: *** Was it your decision to charge Mr. Shorts with allegedly walking in the road?

"A: I have a partner and we discussed the whole situation. And like I - - when we observed Mr. Shorts and he was walking down the middle of the road, at some point before we initiated the stop, which was turning on our lights, we discussed, Hey, he's walking down the middle of the road. Let's stop this guy."

{¶17} Thus, while the officers may have had other reasons for following Shorts, such as the fact that he was seen walking in a high crime area after leaving a known drug house, and that he was not familiar to the officers, for purposes of the Fourth Amendment, he was stopped for violating a traffic law. "[T]raffic stops based on probable cause, even if other motivations existed, are not illegal." *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 10. Accord *State v. Copeland*, 5th Dist. No. 2004CA00208, 2005-Ohio-1067, at ¶16. (appellant observed in a high crime, high drug, high prostitution area walking in the middle of the roadway; officers stopped him and issued a ticket for walking in the roadway; court concluded these facts established reasonable suspicion of criminal behavior and stop was valid). Accordingly, the essential question before us now is whether the trial court correctly concluded that "the officers had more than reasonable suspicion, as they had probable cause that [Shorts] had committed a violation of [COL] § 371.05[]."

{¶18} As previously noted, COL § 371.05(a) prohibits a pedestrian from walking along and upon an adjacent roadway where a sidewalk is provided and its use is practicable. Shorts argues that the trial court erred in concluding that the detectives had reasonable suspicion to detain him for violating COL § 371.05(a) because there were discrepancies in the testimony of the detectives as to whether he was "walking in the middle of Factory Avenue in an eastbound direction," and therefore, "along and upon an adjacent roadway" in violation of the ordinance. Specifically, Shorts contends that the testimony of the two detectives was broadly disparate on this fact and that Detective Baez' testimony was more credible than Detective Middlebrooks' testimony. He also maintains that the trial court erred in concluding that there was no evidence presented that the use of the sidewalk was "not practicable under the circumstances." He further argues that because the trial court did not explain why it chose to believe the testimony of one

officer over the other, it is reasonable to conclude that its findings are not entitled to deference. We disagree.

{¶19} Our review of the hearing transcript reveals that any discrepancies between the detectives' testimony were minor, and we conclude that their testimony was essentially consistent on the relevant points. Detective Baez testified repeatedly that Shorts was walking "in the roadway." Detective Middlebrooks also testified repeatedly that Shorts walked "in the middle of the roadway." The discrepancy to which Shorts refers is the detectives' testimony as to the distance that Shorts walked eastward from the intersection of Victory and Factory to his vehicle. Detective Baez testified that Shorts angled just "catty corner" off the intersection about three or four feet outside the unmarked crosswalk toward his vehicle, which he claimed was parked about twelve feet from the intersection. However, Detective Baez admitted to being unsure as to the exact distance that the vehicle was parked from the intersection. Shorts argues that COL § 371.05(a) does not prohibit walking across the road at a little bit of an angle. Detective Middlebrooks testified that he disagreed with Detective Baez and that Shorts actually walked further east "down the middle of the roadway" approximately eighty feet to where his vehicle was parked, and that he only angled off the intersection to get to the middle of the road.

{¶20} Most significant to this Court's analysis on this discrepancy is the fact that the detectives' testimony agreed on one key piece of evidence, and that is, that Shorts' vehicle was parked in front of 1310 Factory and that this marked the point at which Shorts walked around the rear passenger side of the vehicle toward the tree lawn. Detective Middlebrooks testified that this address was also recorded in the police report that he completed just a few hours after the encounter. The photographs of the area that were introduced into evidence reveal that 1310 Factory is situated approximately four addresses east of the intersection, at least one-half block

away from the intersection, significantly farther east down Factory than the point identified by Detective Baez as being just "catty corner" from the intersection. This photographic evidence was consistent with Detective Middlebrooks' testimony that the vehicle was parked approximately eighty feet from the intersection. Therefore, we conclude that there was competent, credible evidence to support the trial court's conclusion that Shorts was walking "in the middle of Factory Avenue," and thus, "along and upon an adjacent roadway" pursuant to COL § 371.05.

{¶21} Furthermore, our review of the testimony reveals that the use of the sidewalks was "practicable." The term "practicable" is defined in Merriam-Webster online as "capable of being used." Both detectives testified that the condition of the sidewalks was such that they were available and capable of being walked upon. When asked specifically about the condition of the sidewalks, Detective Baez testified that "[s]eems like you can walk on them." Also, Detective Baez testified that he saw Shorts walking along the sidewalk on Victory as he was headed towards Factory, which further corroborates the fact that walking on the sidewalks in that area was practicable. Moreover and most compelling, however, is the photographic evidence introduced into evidence at the suppression hearing which shows that it was practicable to walk on the sidewalks. While there is grass growing between the cracks and they are slightly uneven, they definitely appeared to be practicable. Shorts points to Detective Middlebrooks' testimony that the sidewalks were "pretty ratty" and that if he had his choice he might walk on the tree lawn instead of in the street. Yet, in that same line of questioning, Detective Middlebrooks testified that "[t]he sidewalk is not that tore [(sic)] up." Thus, based on the foregoing testimony and evidence, the trial court correctly concluded that there was no evidence that the sidewalks were not practicable.

**{¶22}** Finally, we note that Shorts did not cite to any legal authority supporting his claim that the trial court was required to state as part of its written findings why it believed the testimony of one witness over the testimony of another. Accordingly, we disregard his argument. *State v. Raber*, 9th Dist. No. 09CA0065, 2010-Ohio-4066, at ¶30 (appellant bears the burden of setting forth an argument on appeal and pointing this Court to applicable legal authority in support of that argument.)

**{¶23}** Accordingly, based on the foregoing, we conclude that based on the detectives' experience, training, and knowledge gained from working for many years in a high crime area; Shorts' conduct; and the totality of the circumstances surrounding this incident, a reasonably prudent officer in that situation would have acted in the same manner. Therefore, the trial court correctly concluded that the officers had reasonable suspicion, as well as probable cause, to stop Shorts and issue a citation for violation of COL § 371.05(a), which prohibits walking in the roadway. Shorts' first and second assignments of error are without merit and are overruled.

Assignment of Error Number Three

"THE OFFICERS DID NOT HAVE PROBABLE CAUSE TO BELIEVE
SHORTS HAD VIOLATED THE LAW BY CROSSING FACTORY STREET."

**{¶24}** Shorts argues under his third assignment of error that the police did not have probable cause to believe that he violated Lorain's jaywalking ordinance because he was merely crossing the street to his parked vehicle. In support of his argument, Shorts cites to *State v. Salas,* 9th Dist. No. 21891, 2004-Ohio-6274. In *Salas*, the appellant was cited for a violation of Akron City Ordinance ("ACO") 77.05 which provides, in relevant part:

"(A) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles, trackless trolleys, or streetcars upon the roadway.

"***

"(C) Between adjacent intersections at which traffic control signals are in operation, pedestrians shall not cross at any place except marked crosswalk[s]." *Salas* at ¶20.

**{¶25}** We concluded in *Salas* that the State failed to meet its burden of proving that there was either reasonable suspicion or probable cause to believe the appellant was jaywalking. Id. at ¶23. Shorts cites to COL § 371.03, which is nearly identical to the Akron ordinance at issue in *Salas* and argues that, similarly, he did not commit the offense of jaywalking. However, contrary to Shorts' assertion, *Salas* is not on point with the case at bar. As previously established, this case involves a violation of a city ordinance that prohibits walking in the roadway where a sidewalk is available. *Salas* involved a jaywalking offense. Accordingly, Shorts' reliance on *Salas* and the similar language of COL § 371.03 is completely irrelevant and inapplicable to this case. Accordingly, Shorts' third assignment of error has no merit and is overruled.

Assignment of Error Number Four

"THE OFFICERS DID NOT HAVE PROBABLE CAUSE TO BELIEVE SHORTS HAD VIOLATED THE LAW BY ALLEGEDLY POSSESSING A PILL BOTTLE CONTAINING DRUGS."

**{¶26}** In his fourth assignment of error, Shorts contends that the trial court erred in concluding that the officers had probable cause to arrest him for possessing a pill bottle containing drugs and drug paraphernalia. We disagree.

**{¶27}** Shorts was arrested for possession of heroin in violation of R.C. 2925.11(A), a felony of the fifth degree pursuant to R.C. 2925.11(C)(6)(a), and possession of drug paraphernalia, i.e., foil, in violation of R.C. 2925.14(C)(1).

**{¶28}** "Officers have probable cause to justify an arrest if 'from the information known to the arresting officers based on reasonably trustworthy information, a reasonably prudent

person would be warranted in believing that the arrestee had committed or was committing an offense.'" *State v. McCraney*, 9th Dist. No. 09CA0079-M, 2010-Ohio-2667, at ¶9, quoting *State v. Scott*, 9th Dist. No. 08CA009446, 2009-Ohio - 672, at ¶11.

> "In order to effectuate an arrest, the arresting officer must have probable cause to believe that the person to be arrested is engaging in criminal activity. *Kurjian* at ¶18, quoting *State v. Tejada*, 9th Dist. No. 20947, 2002-Ohio-5777, at ¶8. (Internal citation omitted.) The amount of evidence necessary for probable cause to suspect a crime is being committed is less evidence than would be necessary to support a conviction of that crime at trial. *Tejada* at ¶8, quoting *State v. Young* (2001), 146 Ohio App.3d 245, 254. It is necessary to show merely that a probability of criminal activity exists, not proof beyond a reasonable doubt, or even proof by a preponderance of evidence that a crime is occurring." *State v. McGinty*, 9th Dist. No. 08CA0039-M, 2009-Ohio-994, at ¶11.

{¶29} Detective Middlebrooks testified that when Shorts threw his hands in the air, Detective Middlebrooks saw an object fly from Shorts' right hand to the east toward the tree lawn and land within approximately two feet from where Shorts was standing. Upon retrieving and examining the object, Detective Middlebrooks discovered that it was a pill bottle. The pill bottle was "warm to the touch" despite the fact that it was only thirty-five degrees outside. Detective Middlebrooks testified that in his training and experience, if it is cold outside and an object has been in someone's hand, it will typically be warm to the touch. He did not notice any other objects in close proximity, and thus, concluded the pill bottle belonged to Shorts. Upon further examination of the bottle, he noticed that it contained a foil packet. Based on his training and experience, such foil packaging is consistent with how drug traffickers and abusers package heroin. Detective Middlebrooks then field tested the contents of the bottle and received a positive result for heroin.

{¶30} Shorts contends that he was arrested before the contents of the pill bottle were field tested for drugs, thus suggesting that the detectives lacked probable cause to arrest him for drug possession in the absence of a field test of the suspected drugs. In *State v. Johnson*, 4th

Dist. No. 06CA34, 2007-Ohio-4662, a deputy observed the defendant in plain view packaging mason jars in a manner consistent with the production of methamphetamine. Id. at ¶13. The court concluded that the defendant's arrest for the manufacture of methamphetamine was supported by probable cause, absent any field tests, based on the deputy's observations that the contents of the jars were indicative of methamphetamine production. Id. We conclude that the case at bar is similar to *Johnson* and that based on his twelve years of experience and training, Detective Middlebrooks possessed the necessary probable cause to arrest Shorts for possession of drugs and drug paraphernalia based on his familiarity with the packaging of heroin.

{¶31} The State brings to our attention the case of *State v. Barton*, 2d Dist. No. 21815, 2007-Ohio-2348, which is directly on point with the scenario in the instant case. In *Barton*, one of the officers observed the appellant leave a house which was a known drug house. Id. at ¶2. After that officer radioed another officer, both officers observed the appellant jaywalking across the street. Id. One of the officers turned his cruiser around and repositioned it with the intention of talking to the appellant about the jaywalking offense. Id. As the officer approached the appellant from behind, the appellant looked back and then threw a baggie over a wall. Id. The officer observed what he believed to be crack cocaine in the baggie. Id. The officer then exited his vehicle, stopped the appellant, patted him down for weapons, and placed him in the cruiser. Id. The second officer arrived at the scene and the baggie was recovered. The officers conducted a field test on the contents of the baggie, which tested positive for cocaine. Id. The Second District held that the officers had probable cause to detain the appellant for the minor misdemeanor jaywalking offense, reasonable articulable suspicion to detain him for the investigation of the crime of drug possession, and probable cause to arrest the appellant after the test of the cocaine. Id. at ¶12. The appellant's motion to suppress was denied. Id. at ¶14.

**{¶32}** We conclude that as in *Barton,* Shorts' actions of walking in the roadway in violation of a city ordinance after leaving a known drug house and tossing an object onto the tree lawn gave Detectives Baez and Middlebrooks probable cause to detain Shorts to issue a citation for the offense of walking in the roadway, reasonable suspicion to investigate for the crime of drug possession, and probable cause to arrest Shorts after the positive test for heroin. Shorts' fourth assignment of error is overruled.

III

**{¶33}** Shorts' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

MOORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

BRENT L. ENGLISH, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and SHERRY GLASS, Assistant Prosecuting Attorney, for Appellee.