[Cite as *State v. Moorer*, 2014-Ohio-4776.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-224 |
| v. | : | (C.P.C. No. 13CR-2407) |
| Sherman L. Moorer, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 28, 2014

*Ron O'Brien,* Prosecuting Attorney, and *Laura R. Swisher,* for appellee.

*Richard D. Brown Law Office, LLC,* and *Richard D. Brown,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendant-appellant, Sherman L. Moorer, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of carrying a concealed weapon in violation of R.C. 2923.12(A)(2). For the reasons that follow, we affirm the judgment of the trial court.

A. Facts and Procedural History

{¶ 2} On March 31, 2012 at approximately 4:45 p.m., Officer Joseph Houseberg of the Columbus Police Department ("CPD") left the station in his cruiser. His partner, Officer Thomas Hand, was riding in the passenger seat. Officer Hand had only been on the force for a short time and Officer Houseberg, who was an experienced patrol officer, was coaching Officer Hand. Shortly after Officer Houseberg began driving west on Mt. Vernon Avenue, he observed two men walking in the middle of Graham Street. According

to Officer Houseberg, the two men were walking diagonally across the street in a southbound direction toward the corner store located at the east side of Graham Street. Officer Houseberg testified that he has made numerous arrests for drug and violent crimes in the area over the last two years, and that a homicide had recently been committed with a firearm in front of the corner store.

{¶ 3} Officer Houseberg turned his cruiser north on Hildreth and cut through an alley to come up behind the two men. The two men were on the east sidewalk when he brought the cruiser to a stop near the curb and just behind the two men. According to Officer Houseberg, when he told the two men to stop, the man closest to him stopped. The other man, later identified as appellant, took another step, hesitated then turned around. Officer Houseberg gave the following account of his encounter with appellant:

> [Prosecutor] Q: And what happened after that?
>
> A: I approached Mr. Moorer. My partner, he approached the other gentlemen, began talking to them, told them why they were stopped was for J-walking.
>
> And I asked Mr. Moorer if he had any weapons on him or anything that could hurt me -- I can't remember the exact language -- and he said, "Yes." I asked him what it was, and he said he had a gun in his pocket.
>
> Q: What did you do at that point?
>
> A: Placed him in handcuffs.
>
> My partner then placed the other gentlemen in handcuffs, removed the weapon, put it up on the front of my cruiser, and then Mr. Moorer was detained in the back of my cruiser.
>
> Q: And you did, in fact, recover a firearm?
>
> A: I did.

(Tr. 10.)

{¶ 4} On May 14, 2013, the Grand Jury indicted appellant on the charge of carrying a concealed weapon in violation of R.C. 2923.12(A)(2). Appellant initially pleaded not guilty to the charge and his counsel filed a motion to suppress the firearm from evidence as being the product of an illegal search. The trial court conducted an

evidentiary hearing on the motion on December 2, 2013. The trial court denied the motion. Thereafter, appellant changed his plea to a plea of no contest. The trial court found appellant guilty of carrying a concealed weapon and sentenced him to two years of community control. Appellant filed a timely notice of appeal to this court.

## B. Assignments of Error

{¶ 5}   Appellant assigns the following as error:

[I.] THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE THEREBY VIOLATING HIS RIGHTS UNDER THE 4TH AMENDMENT TO THE U.S. CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.

[II.] TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL TO APPELLANT IN VIOLATION OF THE 6TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

## C. Standard of Review

{¶ 6}   Appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. *State v. Helmbright,* 10th Dist. No. 11AP-1080, 2013-Ohio-1143. Accordingly, an appellate court's standard of review of a motion to suppress is two-fold. *State v. Holland,* 10 Dist. No. 13AP-790, 2014-Ohio-1964, ¶ 8, citing *State v. Reedy,* 10th Dist. No. 05AP-501, 2006-Ohio-1212, ¶ 5. First, we must determine whether competent, credible evidence supports the trial court's findings. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Second, we must independently determine whether the facts satisfy the applicable legal standard, without giving any deference to the conclusion of the trial court. *Id.*

{¶ 7}   In order to succeed on a claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. *Strickland v. Washington,* 466 U.S. 668, 681 (1984). First, he must demonstrate that his trial counsel's performance was deficient. This requires a showing that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 686. In order to show counsel's performance was deficient, appellant must prove that

counsel's performance fell below an objective standard of reasonable representation. *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133.

{¶ 8} If appellant can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance. *Id.* To show prejudice, appellant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 204.

**D. Legal Analysis**

### 1. Motion to Suppress

{¶ 9} In appellant's first assignment of error, appellant argues that the trial court erred by denying his motion to suppress. We disagree.

{¶ 10} With a few well-defined exceptions, searches and seizures conducted without a warrant are unreasonable and violate the Fourteenth Amendment "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *State v. Ford*, 10th Dist. No. 07AP-803, 2008-Ohio-4373, ¶ 19. Once a warrantless search is established, the state bears the burden of persuasion to show the validity of the search under one of the recognized exceptions to the Fourth Amendment's warrant requirement. *State v. Atchley*, 10th Dist. No. 07AP-412, 2007-Ohio-7009, ¶ 5, citing *Xenia v. Wallace,* 37 Ohio St.3d 216, 218 (1988).

{¶ 11} In this case, the state invokes the exception created by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968), wherein the court held that a police officer may conduct a brief warrantless search of an individual's person for weapons if the officer has a reasonable and articulable suspicion that the "individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Id.* at 24. Such a limited search is not intended to discover evidence of a crime, but to allow the officer to pursue his duties "without fear of violence." *Adams v. Williams,* 407 U.S. 143 (1972).

{¶ 12} In *Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 488 (1998), the United States Supreme Court found that "[a] routine traffic stop" of an offender who has committed a misdemeanor is "analogous to a so-called '*Terry* stop.' " *Id.* In fact, several Ohio courts, including this court, have applied *Terry* in determining the constitutionality

of the search of a pedestrian who has been stopped by police for a misdemeanor traffic offense. *See, e.g.*, *State v. Price*, 10th Dist. No. 99AP-806 (Sept. 21, 2000); *State v. Shorts*, 9th Dist. No. 11CA009965, 2011-Ohio-6202; *State v. Arnold Salas*, 9th Dist. No. 21891, 2004-Ohio-6274.

{¶ 13} In overruling appellant's motion to suppress, the trial court stated:

> THE COURT: All right. I'm going to overrule the Motion to Suppress. These police officers were in a place they had a right to be. They see two individuals jaywalking. Now, the first question is whether or not they have authority to question the jaywalkers, and I think the answer to that question is yes. From what I heard, the question was, "Do you have anything on you" or "Do you have a gun?" He was asked a question. And the Defendant said yes, "I got a gun." And that's how the gun was produced. There is some quarrel, if you will, in the mind of the defense attorney, whether that occurred before or after there was a pat-down of the Defendant. I don't really see that, because I thought what the officer said was he asked, and the Defendant immediately said, I have a gun, a weapon, and there was no reference to any search going on at that time that I heard. So for those reasons, I'm going to overrule the Motion to Suppress, and we'll proceed. All right.

(Tr. 39.)

{¶ 14} Appellant relies on our prior decision in *Price* in support of his claim that the initial *Terry* stop was illegal, inasmuch as appellant's conduct did not give rise to a reasonable suspicion of jaywalking under the Columbus City Code. In *Price*, a CPD officer observed the suspect walk "sort of northeast bound across [North 22nd]" between Mt. Vernon Avenue and Long Street in Columbus. *Id.* at 1. The officer ordered appellant to stop because he believed appellant was jaywalking. When appellant ignored the order, the officer grabbed appellant's hands but appellant tried to pull away. The officer then handcuffed appellant and arrested him on the charge of resisting arrest. CPD searched appellant's person, found cocaine in his pocket and charged him with drug possession. The trial court subsequently denied appellant's motion to suppress.

{¶ 15} On appeal, we concluded that the initial stop of appellant for jaywalking was not valid under *Terry* because the evidence showed that the crosswalks were "an unreasonable distance apart," which legally excused appellant from crossing the street

outside the crosswalk. *Price* at 2. We further determined that the drugs uncovered in the search were the result of an illegal detention of appellant and that the trial court should have suppressed the evidence. *Id.*

{¶ 16} Appellant contends that the record does not contain facts justifying a *Terry* stop in this case because the State failed to present evidence regarding the location of the crosswalks on Graham Street. Appellant maintains that, under *Price*, the firearm uncovered in the subsequent search of appellant's person must be excluded from evidence as the fruit of the poison tree. *See also Salas* at ¶ 22 (state has the burden of producing evidence that the crosswalks were a reasonable distance apart where *Terry* stop is predicated on suspicion of jaywalking).

{¶ 17} The State concedes that the record contains no evidence regarding the availability of crosswalks in the area where appellant crossed the street. Nevertheless, our review of the record reveals sufficient evidence to support a valid *Terry* stop. Columbus City Code 2171.05, entitled "Walking on path or street, jaywalking," provides in relevant part:

> **(a)** *Where a sidewalk is provided and its use is practicable, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.*
>
> * * *
>
> **(d) No pedestrian shall cross a roadway at a place other than a crosswalk except in cases where crosswalks are an unreasonable distance apart.**
>
> * * *
>
> **(f) Except as otherwise provided in this division, whoever violates this section is guilty of a minor misdemeanor.**

(Emphasis added.)

{¶ 18} Officer Houseberg testified that there are sidewalks along Graham Street and the photographic evidence corroborates his testimony. When Officer Houseberg first observed appellant and Quincy Cousar on Graham Street, they were walking in the middle of the street. The reasonable suspicion standard under *Terry* "is an objective, not subjective, one." *State v. McCandlish*, 10th Dist. No. 11AP-913, 2012-Ohio-3765, ¶ 10. The

relevant inquiry is: "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Holland* at ¶ 15, citing *Terry* at 21-22. *See also Carroll v. United States*, 267 U.S. 132 (1925). The evidence presented at the suppression hearing establishes that Officer Houseberg stopped appellant only after he observed a violation of Columbus City Code 2171.05(a).[1]

{¶ 19} In *Shorts*, the court held that a *Terry* stop is justified where an officer observes a violation of a city ordinance that prohibits walking in the roadway where a sidewalk is available. *Id.* at ¶ 23. The applicable municipal ordinance in *Shorts* contained language prohibiting pedestrians from walking in the roadway "where a sidewalk is provided and its use is practicable." *Id.* at ¶ 11. The court noted in *Shorts* that "[t]he term 'practicable' is defined in Merriam-Webster online as 'capable of being used.' " *Id.* at ¶ 21.

{¶ 20} The photographic evidence in this case shows that the sidewalks along both sides of Graham Street are in good condition and free of obstructions. Thus, it was "practicable" for appellant to use the sidewalk on March 31, 2013 and, pursuant to Columbus City Code 2171.05(a), appellant was required to do so regardless of the location of the nearest crosswalk. In *Price*, the objective justification for the initial *Terry* stop was the suspicion of jaywalking as defined in Columbus City Code 2171.05(d), which contains an exception when "crosswalks are an unreasonable distance apart." In this case, Columbus City Code 2171.05(a) provides the objective justification for the initial detention of appellant under the *Terry* exception. Thus, the facts of this case are distinguishable from the facts we relied upon in reversing the trial court in *Price*.

{¶ 21} The evidence in this case shows that Officer Houseberg saw two men walking in the middle of the street in an area where the use of sidewalks was practicable. As stated above, such evidence supports a reasonable suspicion on the part of Officer Houseberg that appellant committed a misdemeanor traffic offense. However, a determination that the articulable facts justify the initial detention of appellant under *Terry* does not end the inquiry. Indeed, "[t]he typical *Terry* stop entails a brief detention sufficient for the police to ask questions pertaining to the suspicious circumstances." *Akron v. Bowen*, 9th Dist. No. 21242, 2003-Ohio-830, ¶ 9. However, an officer does not

---

[1] R.C. 4511.50(A) contains identical language.

have authority to automatically conduct a search of a detainee when a valid stop has been initiated. *Id. See also State v. Spain*, 10th Dist. No. 10AP-319, 2011-Ohio-322, ¶ 18. In order to conduct a pat-down search for weapons, an officer must have reason to believe that an individual is armed and dangerous. *Id.*

{¶ 22}  In this instance, the record contains evidence that this *Terry* stop occurred in a high crime area; that Officer Houseberg is an experienced officer; that he has made numerous arrests in this area for drug offenses and violent crimes in the past two years; and that a firearm had been used to commit a homicide in front of the corner store in the week prior to this incident. Additionally, Officer Houseberg testified that when he initially told appellant to stop, appellant took another step and hesitated before turning around. Officer Hand testified that appellant's hesitation in response to Officer Houseberg's commands caused him to believe that appellant might run away. (Tr. 22.)

{¶ 23} While these facts, standing alone, may not give rise to a reasonable suspicion that appellant was carrying a concealed weapon, such that an immediate search would be warranted, we believe that the circumstances provide an objective justification for Officer Houseberg to inquire of appellant whether he had a weapon in his possession. Indeed, in *State v. Robinette,* 80 Ohio St.3d 234 (1997), the Supreme Court of Ohio held that the officer was justified in briefly detaining a suspect who had been stopped for a minor traffic offense "in order to ask him whether he was carrying any illegal drugs or weapons." *Id.* at 241. In this case, the initial traffic stop was barely underway when appellant's behavior prompted Officer Houseberg to ask appellant if he was carrying a weapon. The evidence shows that the duration of appellant's initial detention was not extended by Officer Houseberg's query and that, under the circumstances, the inquiry constitutes a reasonable safety precaution.  Appellant responded that he had a gun in his pocket. Appellant's response to Officer Houseberg's reasonable inquiry provided an objective justification for the search of appellant's person. *Id.*

{¶ 24} Appellant argues, however, that Cousar's testimony conflicts with Officer Houseberg's testimony in an important respect. According to Cousar, Officer Houseberg did not ask any questions of appellant before he grabbed appellant's arm, placed him against the cruiser and conducted a search.  Appellant argues that Cousar's testimony

shows that Officer Houseberg conducted a search in the absence of facts which would lead a reasonable person to suspect that appellant had a weapon. We disagree.

{¶ 25} The trial court relied on Officer Houseberg's recollection that he asked appellant if he had a weapon before he placed appellant in handcuffs and searched him. Officer Hand corroborated Officer Houseberg's testimony as follows:

> [Officer Hand] A: As Joe was kind of motioning, come in here, the individual on the left [appellant] kind of took a step back. My guy [Cousar] that I was watching on the right – or my version of the right -- kind of just watched me, kind of head's leaned back and forth, didn't really move, but we sensed some sort of hesitation at that point. *And at that moment, Joe asked, you know, "Hey, you guys got anything on you?"*
>
> Q: Okay. And did you hear an answer?
>
> A: No
>
> Q: So you didn't hear – if someone said something in answer to what Joe said, you didn't hear it.
>
> A: Right, because I was in tunnel vision. I was making sure -- Because I was under the impression that we were about to be going on a foot chase.

(Emphasis added.)(Tr. 20-21.)

{¶ 26} Our standard of review requires us to defer to the trial court's weight and credibility determinations in reviewing a ruling on a motion to suppress. *State v. Fanning,* 1 Ohio St.3d 19 (1982). And where the record contains competent credible evidence supporting the trial court's factual findings, we will not disturb those findings on appeal. *Burnside.* Officer Houseberg's testimony supports the trial court's finding that he asked appellant if he had a weapon prior to initiating a search. Officer Hand's testimony corroborates Officer Houseberg's in this regard. Although Cousar's testimony conflicts with that of the officers in many respects, Cousar acknowledged on cross-examination that he heard appellant tell Officer Houseberg he had a gun.

{¶ 27} In short, the record contains competent credible evidence that CPD stopped appellant based upon a reasonable suspicion that appellant had committed a misdemeanor traffic offense. CPD subsequently conducted a pat-down search of appellant's person based upon specific articulable facts which gave rise to a reasonable

suspicion that appellant had a firearm in his possession. Accordingly, we hold that the trial court did not err when it denied appellant's motion to suppress the evidence obtained as a result of the search. Appellant's first assignment of error is overruled.

### 2. Ineffective Assistance of Counsel

{¶ 28} Appellant alleges that his trial counsel provided him with ineffective assistance because he failed to adequately investigate the matter and obtain critical evidence to support the motion to suppress. Specifically, appellant claims that his counsel failed to obtain videotape evidence of the incident even though appellant told his counsel that such evidence could have been captured by surveillance cameras in the neighborhood. Appellant also claims that his counsel failed to obtain audio recordings from the devices used by CPD. Finally, appellant claims that his counsel refused to let him testify at the suppression hearing even though his testimony would have contradicted that of the two CPD officers.

{¶ 29} We note that evidence in the record arguably supports appellant's claim that a video recording device in the area captured all or part of the traffic stop in question.[2] However, even if we were to accept appellant's assertion that his trial counsel is at fault for the failure to acquire such evidence, we cannot blindly accept appellant's claim that the video and audio recordings would have proven that the firearm was the product of an illegal search. Indeed, "[s]peculation is insufficient to establish ineffective assistance." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 217, citing *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 219, and *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207,¶ 121. For similar reasons, we find no support in the record for appellant's claim that his counsel forbade him to testify at the hearing and that his testimony would have materially benefited his cause. Moreover, we will not speculate whether the trial court would have believed appellant's version of the facts.

{¶ 30} In short, the record on appeal does not contain evidence in support of appellant's claim of ineffective assistance of trial counsel. For this reason, appellant's claim of ineffective assistance of trial counsel is without merit and his second assignment of error is overruled.

---

[2] Although appellant's conversations with his counsel are not part of the record in this case, Officer Houseberg testified that there are video surveillance cameras trained on the corner store.

{¶ 31} Having overruled each of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J. and TYACK, J., concur.

———————————————