[Cite as *State v. Lenzy*, 2018-Ohio-3485.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | Case No. 2018CA00023 |
| ERIC LENZY | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Case No. 2017CR1721 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 27, 2018 |
| APPEARANCES: | |

For Plaintiff-Appellee

JOHN D. FERRERO,
Prosecuting Attorney,
Stark County, Ohio

By: KRISTINE W. BEARD
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South – Suite 510
Canton, Ohio 44702

For Defendant-Appellant

KRISTINA R. POWERS
Stark County Public Defender
201 Cleveland Ave. S.W. Suite 104
Canton, Ohio 44702

*Hoffman, J.*

{¶1}   Appellant Eric Lenzy appeals the judgment entered by the Stark County Common Pleas Court convicting him of one count possession of cocaine (R.C. 2925.11(A)(C)(4)(a)) and one count possession of drugs (R.C. 2925.11(A)(C)(2)(a)) upon a plea of no contest, and sentencing him to three years of community control.  Appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2}   During the afternoon hours of September 8, 2017, Canton Police Officer Nicholas Casto and his partner saw Appellant walking near the middle of Dill Street N.E. in Canton, Ohio.  The area was known by police to be a high crime area.  Appellant violated a Canton City Ordinance by walking in the middle of the street, for which a minor misdemeanor citation could be issued.

{¶3}   Officer Casto and his partner pulled their marked cruiser up to Appellant. They exited the vehicle and asked Appellant to step over to them.  They wanted to identify Appellant, see if he had any outstanding arrest warrants, and possibly issue a citation. Appellant asked why he was being stopped, and Casto responded because he was walking in the middle of the street.  Appellant took a few steps away from the officers.

{¶4}   The officers saw Appellant reach toward his waistband.  Concerned Appellant was reaching for a gun, they tackled him.  The officers seized a baggie of crack cocaine and a Suboxone pill in a wrapper from Appellant.

{¶5}   Appellant was indicted for possession of cocaine and possession of drugs, both felonies of the fifth degree.  He moved to suppress the drugs, and the case

proceeded to a suppression hearing in the Stark County Common Pleas Court, at which Officer Casto was the only witness to testify.

{¶6} On direct examination, Casto testified when asked to step over to the cruiser, Appellant became confrontational, and asked what he was being stopped for. Appellant reached in his pockets and waistband, and the officers took him to the ground. Casto testified, "And at that point is where we located that he had a baggy with some crack on it, which he admitted that that's what it was, and also a Suboxone wrapper with an orange pill that I believe was sent to the lab and tested as Suboxone." Tr. 12. He testified when they saw Appellant go into his pants pocket, they became concerned with officer safety. As to the crack cocaine, he testified, "I believe it was hanging out of his pocket or right underneath him." Tr. 13.

{¶7} On cross-examination, Casto testified Appellant "began to kind of just walk away, not acknowledge us. Obstructing, if you will." Tr. 22. He testified Appellant committed the offense of obstructing official business. He testified Appellant took maybe two or three steps away from them, delaying official police business by about one second. Tr. 26. He testified before Appellant reached into his waistband, he was under arrest for obstructing, and they immediately searched Appellant after he was handcuffed.

{¶8} The court then questioned Casto further concerning where the drugs were found. The following colloquy occurred between the court and Casto:

THE COURT: Okay. And tell me how then you discovered the contraband.

THE WITNESS: I think it's in my report[1] where the Suboxone strip was, I believe that was in his right pocket, and the baggy of cocaine. That he admitted that it was, was laying under him, when we – after we took him to the ground.

THE COURT: Okay. It didn't feel like a weapon? Basically, from your perspective at this point in time, it was a search incident to an arrest. I think you said that at that point in time he was under arrest for obstruction?

THE WITNESS: Obstructing, yes.

Tr. 38.

{¶9} The court overruled the motion from the bench. After finding police could stop Appellant for walking in the middle of the street in violation of city ordinance, the court found in pertinent part as follows:

Upon approaching the Defendant and activating the lights, both officers got out of the vehicle, they asked the Defendant – asked or ordered the Defendant to come to them. So at that point in time they were stopping the Defendant.

The Defendant, at that time continued to walk away from them which gave rise to their position that he was interfering with official business,

---

[1] Casto's report was not offered or admitted into evidence.

obstructing official business, and it was thereafter their intent to effectuate an arrest of this Defendant.

That while doing that, they observed him make a movement towards his waist which could well have been pulling up his trousers, as Defense counsel has intimated, but the police officers, at that point in time, are not in a position to be giving anyone the benefit of any doubt that they're just pulling up their trousers, when they could be pulling out a weapon.

Given the history of that area, prior interactions with defendants in that area, guns in that area, they had every reason, at that point in time, to effectuate the arrest, which included the search for weapons, for contraband, as a search incident to an arrest.

While the Court appreciates the position of the defense, that the individual was just walking down the street when he was, in theory, accosted by the police officers, they had every reason to investigate. And when he decided to walk away from them, while at the same time reaching towards his waist, for officers' safety they had every reason to effectuate the take down and search for weapons in which time search incident to arrest the contraband was seized.

Tr. 45-46.

{¶10} By entry filed January 4, 2018, the court overruled the motion to suppress, incorporating its findings of fact and conclusions of law as stated on the record at the

hearing. Appellant entered a plea of no contest and was convicted as charged. He was sentenced to three years community control.

{¶11} It is from the February 21, 2018 judgment of conviction and sentence Appellant prosecutes this appeal, assigning as error:

"THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

{¶12} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the

appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

**{¶13}** When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning* , 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

**{¶14}** Appellant first argues police did not have a reasonable, articulable suspicion of criminal activity to justify stopping him.   An investigatory stop must be based upon reasonable suspicion of criminal activity, supported by specific articulable facts pointing towards a citizen's involvement in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**{¶15}** Reasonable suspicion to stop an individual has been found to exist in cases involving misdemeanor traffic offenses, including where pedestrians are illegally walking on a roadway. *State v. Shorts,* 9th Dist. Lorain No. 11CA009965, 2011-Ohio-6202, ¶ 10–18(officers had reasonable suspicion to stop defendant for walking in the middle of the road); *State v. Moorer,* 2014-Ohio-4776, 23 N.E.3d 173, ¶ 21 (officer had reasonable suspicion to stop defendant for jaywalking);  *State v. Parsons*, 11th Dist. No. 2015-P-0084, 2016-Ohio-8109, 74 N.E.3d 945, ¶ 25 (officer had reasonable suspicion to stop

defendant when he observed him walking with a female companion in the middle of the road).

{¶16} In the instant case, Officer Casto testified Appellant was walking in the middle of the roadway, in violation of a Canton City Ordinance. The officers therefore had a reasonable suspicion of criminal activity to justify stopping Appellant.

{¶17} Appellant next argues the court erred in finding the officers were justified in seizing Appellant and conducting a pat down search for weapons.

{¶18} An officer can conduct a limited protective search for concealed weapons when the officer has reasonably concluded the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others. *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993). The officer does not need to be certain the person has a weapon on them to initiate a pat down. *State v. Smith*, 56 Ohio St.2d 405, 384 N.E.2d 280 (1978). Rather, the standard by which the officer is judged is that of a reasonably prudent man under the circumstances, who would be warranted in the belief his safety was in danger. *Id.* at 407. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence * * *." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972).

{¶19} In the instant case, we find the officers had a reasonable belief Appellant was armed, justifying his seizure for a pat down search. Appellant was in a high crime area, where Officer Casto testified they had received prior calls concerning guns. Appellant reached for the pockets and waistband of his pants after questioning the reason

for the stop in a confrontational manner, at which point officers became concerned he was reaching for a weapon.

**{¶20}** In *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the United States Supreme Court established the "plain feel" doctrine as it relates to a *Terry* pat-down search for officer safety. In *Dickerson*, the court held police may seize contraband detected through the sense of touch during a valid *Terry* pat-down, if its identity as contraband is immediately apparent. *Id.*

**{¶21}** If the officer conducting the search must manipulate the object to determine its identity as contraband, said search exceeds the scope of a lawful *Terry* search and any resulting seizure of contraband by the officer is not justified under the plain feel doctrine. *Id.* at 378. "[O]nce the officer determines from his sense of touch that an object is not a weapon, the pat down frisk must stop. The officer, having satisfied himself or herself that the suspect has no weapon, is not justified in employing *Terry* as a pretext for a search for contraband." *Evans, supra,* at 414.

**{¶22}** However, while Casto's testimony is inconsistent concerning where the drugs were found, he did not testify the drugs were found based on the plain feel doctrine during a *Terry* pat down for weapons. Rather, Casto testified on cross-examination and during questioning by the court the drugs were found during a search incident to a lawful arrest for obstructing official business. The trial court found the drugs were found during the search incident to the arrest.

**{¶23}** A search incident to arrest is an exception to the general rule warrantless searches are per se unreasonable. *State v. Mims,* 6th Dist. Ottawa No. OT–05–030, 2006-Ohio-862, ¶23. However, police may conduct a search of the arrestee's person

incident only to a *lawful* arrest. *State v. Dillon,* 10th Dist. Franklin No. 04AP–1211, 2005-Ohio-4124, ¶31. Evidence obtained as a result of an illegal arrest is inadmissible at trial. *State v. Henderson*, 51 Ohio St.3d 54, 56, 554 N.E.2d 104 (1990), citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Probable cause to conduct a warrantless arrest exists when police have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information to warrant a belief by a prudent person an offense has been committed by the person to be arrested. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

**{¶24}** R.C. 2921.31(A) defines obstructing official business:

No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

**{¶25}** R.C. 2921.31(A) does not require the state to prove the offender's conduct prevented a public official from doing his job. *State v. Stayton*, 126 Ohio App.3d 158, 163–64, 709 N.E.2d 1224, 1227 (1st Dist. Hamilton 1998). Rather, the statute is satisfied by "any act which hampers or impedes a public official in the performance of his lawful duties." *Id.* at 164. The *Slayton* court further explained:

That is not to suggest that every act that can conceivably be said to hinder a police officer rises to the level of criminal conduct. Certainly there is a level of hindrance that is simply too casual, remote, or indirect to be punishable under the statute. Although entitled to full respect of the badge and uniform in the execution of his or her duty, a police officer is expected to tolerate a certain level of uncooperativeness, especially in a free society in which the citizenry is not obliged to be either blindly or silently obeisant to law enforcement. Interference with the police by citizens must, therefore, be necessarily viewed as a continuum along which, at a certain point, the line is crossed.

*Id.*

**{¶26}** We find based on Officer Casto's testimony the officers had probable cause to arrest Appellant for obstructing official business. On direct examination, Casto made no mention of an arrest or an intention to arrest for obstructing official business. For the first time, on cross-examination, he testified, "He began to kind of just walk away, not acknowledge us. Obstructing if you will." Tr. 22. He testified the conduct which constituted obstructing official business was taking two or three steps away from the officers, delaying them by maybe a second. Tr. 26.

**{¶27}** While Appellant argues at page 11 of his brief the "police were not hampered or impeded in any way by a one second delay in the Appellant turning around and complying," the record from the suppression hearing does not support his claim he turned around and complied. Officer Casto was questioned concerning a notation in the

police report Appellant reached in his pocket while "walking back." Tr. 28. Officer Casto testified his partner wrote the supplement, and maintained Appellant was still walking away when he reached toward his waistband and was tackled. Tr. 28-30, 37. Officer Casto's partner did not testify at the suppression hearing and his partner's report was not admitted into evidence.

{¶28} The officers only needed probable cause to arrest, not proof beyond a reasonable doubt Appellant was obstructing official business. Although the delay was slight, based on the officer's testimony Appellant walked away and had not taken any action to comply with their request when they developed a reasonable suspicion he was armed and took him to the ground, we agree with the trial court they had probable cause to arrest him for obstructing official business. Therefore, we find the court did not err in finding the search justified as incident to a lawful arrest.

{¶29} The assignment of error is overruled. The judgment of the Stark County Common Pleas Court is affirmed. Costs are assessed to Appellant.

By: Hoffman, J.

Gwin, P.J. and

Wise, Earle, J. concur